No. 02-561

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 278

MERLE J. FARRIER,

        Petitioner and Respondent,

    v.

TEACHERS' RETIREMENT BOARD
OF THE STATE OF MONTANA,

        Respondent and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis and Clark, Cause No. ADV 2001-402
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Vivian V. Hammill, Special Assistant Montana Attorney General, Department
of Administration, Helena, Montana

        For Respondent:

            Peter Michael Meloy, Jennifer S. Hendricks, Helena, Montana

Submitted on Briefs: December 5, 2002

Decided:  October 7, 2003

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Appellant Teachers' Retirement Board of the State of Montana appeals from the District Court's reversal of its determination that Respondent Merle J. Farrier was ineligible to receive retirement benefits from the Teachers' Retirement System while he remains a full-time employee of the University of Montana, contributing to the Optional Retirement Program.

¶2    We affirm in part and reverse and remand in part.

## ISSUES

¶3    Two issues are presented on appeal:

¶4    1.    Did the District Court err in determining that Farrier could receive retirement benefits from the Teachers' Retirement System while employed full-time by the University of Montana and contributing to the Optional Retirement Program?

¶5    2.    Do the applicable statutes deny Farrier equal protection of the laws guaranteed by Article II, Section 4 of the Montana Constitution?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6    Farrier was hired by the Hot Springs School District in 1969.  He became a member of the Teachers' Retirement System (TRS) and regularly contributed from his wages.  In 1993, while still a full-time teacher for the school district, he accepted a part-time position at the University of Montana (University).

¶7    When he was hired by the University, Farrier was given the opportunity to make a one-time election to have his retirement benefits from that position either pay into TRS, or

2

into the Optional Retirement Program (ORP) that was available to employees of the Montana University System. He elected ORP coverage.

¶8 In 1999, Farrier retired from his teaching position in the school district. He applied for and began receiving retirement benefits from TRS in July 1999. In October 1999, the Teachers' Retirement Board (TRB) learned that Farrier had accepted a full-time teaching position at the University, and was contributing to ORP. TRB informed Farrier that payment of his TRS benefits would be suspended until he ceased employment at the University if he exceeded the post-retirement earnings limitations set out in § 19-20-804, MCA.

¶9 Farrier contested the TRB decision and the parties submitted the matter to a hearing examiner on cross-motions for summary judgment. The hearing examiner ruled in favor of TRB. TRB modified the findings in the hearing examiner's report by making a small text change in one section, adding a paragraph to another section, and deleting another section in its entirety. It then issued a Final Order adopting the hearing examiner's order with the TRB modifications and denying Farrier TRS benefits as long as he remained employed full-time at the University.

¶10 Farrier appealed the decision to the District Court. After a hearing, the District Court found that TRB was in error to withhold Farrier's benefits while he was employed full-time at the University.

¶11 From this ruling, TRB appeals.

**STANDARD OF REVIEW**

3

¶12    A district court reviews an administrative decision in a contested case to determine whether the findings of fact are clearly erroneous and whether the agency correctly interpreted the law. *Laudert v. Richland County Sheriff's Dep't*, 2000 MT 218, ¶ 14, 301 Mont. 114, ¶ 14, 7 P.3d 386, ¶ 14. We employ the same standards when reviewing a district court order affirming or reversing an administrative decision. *Laudert*, ¶ 14 (citing *Langager v. Crazy Creek Prods.*, 1998 MT 44, ¶ 13, 287 Mont. 445, ¶ 13, 954 P.2d 1169, ¶ 13).

## DISCUSSION

## ISSUE ONE

¶13    *Did the District Court err in determining that Farrier could receive retirement benefits from the Teachers' Retirement System while employed full-time by the University of Montana and contributing to the Optional Retirement Program?*

¶14    In 1993, Farrier was employed full-time as a school teacher and was paying into TRS. He accepted a part-time position at the University and was told that he could elect to pay contributions earned through the University position into ORP instead of TRS. He was apparently informed of this by University administrators and did not discuss the election with any TRS representatives.

¶15    On March 11, 1993, Farrier signed a Notice of Election (Notice) requesting that his contributions from the University employment pay into ORP. In large text, the Notice stated,

> I hereby elect to participate in the Optional Retirement Program established by the Board of Regents in accordance with the provisions of Title 19, Chapter 21, M.C.A. I understand that by this election I become ineligible to be an active member of the Teachers' Retirement System or to receive monthly

4

benefits as provided in Title 19, Chapter 4, M.C.A. while I remain eligible to participate in the Optional Retirement Program.

¶16    The statement on the Notice is consistent with the then-applicable statutes.  When Farrier signed the Notice, the statutes governing TRS were set forth in Title 19, Chapter 4 of the Montana Code Annotated.  (These statutes have since been renumbered by the Code Commissioner as Title 19, Chapter 20.)  The statutes governing ORP were, and remain, set forth in Title 19, Chapter 21.

¶17    The language in the Notice is unambiguous.  It states that election into ORP makes the elector ineligible to be an active member of TRS.  It further states that the elector, for as long as he remains eligible to participate in ORP, cannot receive monthly benefits from TRS.

¶18    According to § 19-4-303, -304, MCA (1991), a TRS member who is ineligible to be "active" becomes either "inactive" or "terminated."  For purposes of this analysis, it is important to clarify the rights and duties of each status as they are set out in the statutory language.

¶19    Section 19-4-302, MCA (1991), applies to "active" members:  "(1) [T]he following persons must be active members of [TRS] . . . (a) any person who is a teacher . . . (b) any person who is . . . a member of the instructional . . . staff of: (ii) a unit of the Montana university system and who has not elected to participate in [ORP]."

¶20    Section 19-4-303, MCA (1991), applies to "inactive" members:  "Any person's active membership in [TRS] shall terminate, but he shall be an inactive member, when:  (1) he

5

ceases to be employed in a capacity that allows his membership and he has 5 or more years of creditable service. . . ."

¶21 Finally, § 19-4-304, MCA (1991), applies to "terminated" members: "The active or inactive member . . . [becomes terminated] when: (1) he retires on a retirement allowance . . . [or] (3) he withdraws his accumulated contributions. . . ."

¶22 In summary, active members of TRS include teachers and non-ORP university professors; inactive members of TRS include members who have belonged for five or more years, but are currently not "employed in a capacity" which allows them to be active; and terminated members include members who have retired on a retirement allowance or withdrawn their contributions.

¶23 Section 2.44.305, ARM, is consistent with this statutory language. It provides in pertinent part:

> (2) Members of the Montana university system, electing to participate in [ORP], will not be eligible for retirement benefits under Title 19, chapter 4, parts 8 and 9 until they have terminated their employment. (3) Retirees returning to employment within a unit of the university system and electing to participate in [ORP] will be reinstated to the status of an inactive vested member of [TRS] and their monthly benefit will be canceled.

¶24 Two ORP statutes also play a role. Under § 19-21-201, MCA, "(1) Academic . . . personnel . . . are eligible for and may elect to participate in [ORP] instead of [TRS]. . . . (2) The election must be exercised by filing a written notice with [TRS] and the disbursing officer of the employer. The election is effective as of the date the notice is filed. . . ."

6

¶25     Section 19-21-202, MCA, describes the effect that the election of ORP has on an employee's rights under TRS, stating,

> (1) An election under 19-21-202 to participate in [ORP] is a waiver of all rights and benefits under [TRS] except as provided in this section.  (2) A member of [TRS] who elects to participate in [ORP] is considered, for the purpose of determining eligibility for rights and benefits under that system, to be no longer employed in a capacity that allows active membership in that system as of the effective date of the election.  Thereafter, the member is considered an inactive member of [TRS] if qualified under 19-4-303, with the rights and privileges provided under 19-4-603(1) [with the right to withdraw contributions or remain an inactive member].  A member who elects to participate in [ORP] who does not qualify as an inactive member . . . is considered a terminated member. . . .  (3) A person who elects to participate in [ORP] is ineligible to be an active member of [TRS] while continuously employed in a position eligible to participate in [ORP].

¶26     Pertinent to the issue at hand, § 19-21-201, MCA, explains that the election of ORP is effective on the filing date of the Notice.  Section 19-21-202(2), MCA, then adds that the election of ORP causes the elector to be deemed "no longer employed in a capacity that allows active membership" in TRS, and places the elector in inactive status if he qualifies as such.

¶27     When Farrier, as both a full-time public school teacher and part-time university professor, submitted his Notice in 1993, he created a paradox.  Applying these statutes, if such were possible, he simultaneously *must* be an active member of TRS because he is a teacher (§ 19-4-302(1)(a), MCA), and *is ineligible* to be an active member of TRS, because he elected ORP coverage (§ 19-21-202(2), MCA).

¶28     This paradox, however, did not attract attention from any of the concerned parties in 1993.  Although Farrier signed the Notice, he and the University apparently failed to discern

7

its significance. Moreover, when TRS received the Notice a few weeks later, it did not attempt to rectify the situation.

¶29 It was not until Farrier retired from his public school teaching position in 1999 that the paradox created a noticeable ripple in the system. At that point, he went from being a part-time to a full-time employee at the University. His 1993 Notice remained in effect, and his university position continued to pay into ORP. However, when he began to receive retirement benefits from TRS, as was appropriate for a terminated member under § 19-4-304(1), MCA (now renumbered as § 19-20-304, MCA), someone at TRS finally noticed there was a problem.

¶30 In describing the effect of the TRB order that is now on appeal, Farrier accurately summarized his dilemma: "Mr. Farrier became an inactive member of TRS in 1992 and . . . was active until 1999; . . . he is barred from any university employment while receiving TRS benefits and . . . he can work for the university up to one-third time."

¶31 Hearing Examiner Paul D. Johnson recognized the paradox in his TRB Order and Proposal, dated March 19, 2001. He noted that Farrier's 1993 Notice remained in effect when he became employed full-time by the University in 1999. He explained that, when a person elects to participate in ORP, he waives his rights and benefits under TRS, with the limited exceptions set forth in § 19-21-202(2), MCA, concluding,

> Thus, a TRS member like Farrier who elects to be a member of ORP is considered, for the purpose of determining eligibility for rights and benefits under TRS, to be no longer employed in a capacity that allows active membership in TRS; after the date of the election that ORP member is considered an inactive member of TRS. . . .

8

¶32 In its order, the District Court found that Farrier became ineligible to be an active TRS member at the time of his ORP election. It found that, being ineligible for "active" status, Farrier must assume either the status of "inactive" or "terminated." Noting that § 19-21-202(2), MCA, specifically designates an ORP participant as "no longer employed in a capacity that allows active membership" in TRS, and that, per § 19-4-303, MCA, a member becomes inactive when he ceases to be employed in a capacity that allows his membership, but has five or more years of creditable service under TRS, the District Court found that Farrier "became an inactive TRS member at the time of his ORP election." This finding is not clearly erroneous and this Court declines to disturb it.

¶33 The District Court next determined what benefits Farrier was entitled to receive, finding that, under § 19-21-202, MCA, he retained all of his rights as an inactive member of TRS, and noting that § 19-4-603(1), MCA, authorized him to withdraw all of his accumulated contributions or to remain an inactive member *with the right to qualify for benefits*. Again, this finding is not clearly erroneous.

¶34 It appears, however, that the District Court went on to confuse the right to qualify for benefits at some point in the future with the right to immediate receipt of said benefits. It is apparent the court believed that Farrier was in danger of losing his right to receive benefits forever, as opposed to experiencing a delay in receipt of the monthly payments until such time as he was no longer an active member of ORP.[1]

---

[1] While the District Court opinion does not set out discrete Findings of Fact, during its discussion it states, "Then, in 1999, TRS informed Farrier that he would not receive the benefits after all . . . and all he would get back were his contributions to the plan."

9

¶35    Further complicating the situation is the one-third earnings limitation set out in § 19-20-804, MCA. Both Farrier and TRB place great emphasis in their arguments upon whether or not § 19-20-804, MCA, applies to Farrier. According to § 19-20-804(2), MCA, a retired TRS member may be employed part-time in a position specified in § 19-20-302, MCA, and may earn one-third of his average final compensation. Farrier argues that he is not employed in a position specified in § 19-20-302, MCA, and thus he is not bound by the one-third limitation. TRB argues that Farrier's university employment is a position specified in § 19-20-302, MCA, and that he is bound by the one-third limitation.

¶36    We find it unnecessary to reach this issue. Section 19-20-804, MCA, begins, "Upon termination, a member who has attained normal retirement age must receive a retirement allowance. . . ." As the District Court found, and as the statutes explain, Farrier is not a terminated member; he is inactive. Section 19-20-804, MCA, applies only to terminated members. Therefore, it does not apply to Farrier.

¶37    However, we are forced to consider the paradox created by Farrier's 1993 Notice. The hearing examiner recognized the statutory difficulties that were created when a teacher *required* to contribute to TRS elected to participate in ORP, when simultaneous membership in both retirement programs is statutorily prohibited. When the TRB representatives met with Farrier's counsel to discuss the hearing examiner's findings and prepare a final report,

they chose to deal with the difficulty by simply deleting that portion of the hearing examiner's report which pointed out the problem.[2]

¶38 Although TRB's final determination does not address this statutory conundrum, we conclude we must address it here. It is impossible to simply find that Farrier is an inactive TRS member without clarifying the date upon which his status ceased to be active.

¶39 It would be simple for this Court to determine that Farrier was inactive as of April 6, 1993.[3] However, we must take into account that TRS continued to accept Farrier's contributions for six more years, and did not give him any indication that his status had changed. There is no indication in the record that TRS itself noticed the discrepancy until October 1999.

¶40 Section 19-4-401, MCA, states, in part,

> (2) The creditable service of a member includes . . . (a) each year of service for which contributions to the retirement system were deducted from his compensation. . . . (3) The retirement board's determination of creditable service under this section is final and conclusive for the purposes of the retirement system unless, at any time, the board discovers an error or fraud in the establishment of creditable service, in which case the board shall redetermine the creditable service.

---

[2] The following dialogue was recorded in the minutes of the pertinent TRB meeting:

Turcotte: In actuality, though, his part time employment with the University should have been under Teachers' Retirement and not have the option of selecting ORP.

Ryan: Yes.

Hammill: I believe that it should have been the policy of the Board way back when, when ORP first cam. [sic]

Turcotte: That's what the ORP statute is trying to address.

Hammill: I think so.

[3] This is the date when TRS received Farrier's Notice.

11

¶41 Farrier had contributions to the retirement system deducted from his compensation after the filing of the Notice all the way up until mid-1999. Thus, it appears from § 19-4-401(2), MCA, that these years should be considered as "creditable service," in spite of the difficulties with the Notice. Likewise, upon receipt of the hearing examiner's report, if not sooner, TRB discovered an error in the establishment of creditable service, and upon issuance of its final report, reaffirmed that Farrier's service through mid-1999 was creditable service for the purposes of his TRS benefits. We see no reason to disturb this finding and affirm the District Court's finding that Farrier's service through his retirement from the school district in 1999, during which time TRS accepted his contributions, counts as creditable service for the purposes of his TRS benefits.

¶42 In summation, we conclude that the District Court did not err in finding that Farrier is an inactive member of TRS under the applicable statutes and that he is entitled to all the rights and benefits appurtenant to this status. However, we conclude that the District Court incorrectly interpreted the law when it held that Farrier was entitled to receive benefits while maintaining inactive status. Based upon our review of the applicable statutes and their interplay, we conclude that Farrier is precluded from receiving any further TRS benefits until such time as his status with TRS is that of a terminated member.

### ISSUE TWO

¶43 *Do the applicable statutes deny Farrier equal protection of the laws guaranteed by Article II, Section 4 of the Montana Constitution?*

12

¶44 Although the District Court determined that Farrier was, by statutory construction, entitled to receive his TRS benefits, it went on to examine the constitutionality of the "statutory scheme" as it applied to Farrier. However, neither the District Court in its Order, nor the parties in their respective briefs, informed this Court as to which particular statutes were allegedly unconstitutional. Adequate briefing of constitutional arguments is required by this Court. *State v. Zackuse* (1992), 253 Mont. 305, 309, 833 P.2d 143, 145. Because the parties failed to identify with specificity the allegedly unconstitutional statutes, this Court will not consider their constitutional arguments.

## CONCLUSION

¶45 For the foregoing reasons we reverse the decision of the District Court on Issue 1 and remand for further proceedings consistent with this Opinion.

/S/ PATRICIA COTTER

We Concur:

/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ JIM RICE

13