No. 04-760

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 229

MERLE J. FARRIER,

        Petitioner and Respondent,

    v.

TEACHER'S RETIREMENT BOARD
OF THE STATE OF MONTANA,

        Respondent and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                       In and for the County of Lewis and Clark, Cause No. BDV 2001-402,
                       The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Vivian V. Hammill, Special Assistant Attorney General, Department of
                Administration, Helena, Montana

        For Respondent:

                Peter Michael Meloy and Jennifer S. Hendricks, Meloy Trieweiler, Helena,
                Montana

                              Submitted on Briefs:  July 26, 2005

                                     Decided:  September 13, 2005

Filed:

                                  Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1      Appellant Teacher's Retirement Board (TRB) appeals from an order entered by the First Judicial District Court, Lewis and Clark County, granting summary judgment in favor of Respondent Merle Farrier (Farrier). Farrier, a former employee of the Hot Springs School District and a current employee of the University of Montana (University), challenged the statutory scheme governing the eligibility for public pensions of those employees who work for a local school district, retire, and then begin work at the University. The District Court found that the statutory proscription that prevents a retired teacher from receiving retirement benefits from a state sponsored retirement program while he or she remains an employee of the University and a contributing member of another private retirement program violates the right to equal protection. We reverse.

¶2      We must address whether the District Court properly determined that § 19-21-202, MCA, and Rule 2.44.305, ARM, violated Farrier's right to equal protection under the Montana Constitution.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3      The determination of Farrier's retirement benefits provides the underlying facts upon which TRB bases this appeal. Our decision in *Farrier v. Teacher's Retirement Board*, 2003 MT 278, 317 Mont. 509, 78 P.3d 1207, sets forth the details of the determination proceedings and subsequent appeals.

¶4      To summarize, Farrier retired in 1999 after thirty years of teaching in the Hot Springs School District. At that time he remained fully vested in certain retirement benefits from the Teacher's Retirement System (TRS), which is part of Montana's pension system for state

2

and local employees. In 1993, while still a full-time teacher for the school district, Farrier accepted a part-time position as a visiting professor at the University and elected to pay his University retirement benefits into the Optional Retirement Program (ORP) instead of TRS. Farrier accepted a full-time teaching position at the University after he retired.

¶5     Farrier's employment with the University triggered the application of two inter-locking provisions of Montana's teacher retirement system: Section 19-21-202, MCA, and Rule 2.44.305, ARM. First, § 19-21-202, MCA, restricts a teacher's participation in TRS if he or she is employed by the University and elects to enroll in ORP. The statute deems "inactive" any TRS member who enrolls in ORP and prohibits the receipt of benefits until such time as that member qualifies or terminates employment in the second job. Second, Rule 2.44.305, ARM, prohibits members of the University system who elect to participate in ORP from receiving TRS retirement benefits until they have terminated their employment. This provision permits teaching retirees returning to employment within the University and electing to participate in ORP to be reinstated to the status of an inactive vested member of TRS.

¶6     Taken together, these provisions require a retired local teacher who accepts a subsequent job at the University to choose, during the period he or she receives a salary from the second job, between (1) not receiving retirement benefits from the first job but accruing additional retirement benefits from the second job, or (2) receiving retirement benefits from the first job but not accruing further benefits from the second job. Indeed, the University contract provided Farrier the opportunity to make a one-time election to pay his retirement benefits into either TRS or ORP and contained the following acknowledgment: "I understand

3

that by this election I become ineligible to be an active member of [TRS] or to receive monthly benefits as provided by Title 19, Chapter 4, M.C.A. while I remain eligible to participate in the [ORP]." This choice between receiving the first pension and accruing the second is required only by retired teachers who accept a subsequent job at the University, not when retired teachers accept a second public job. As such, Farrier retained the option of continuing to pay into TRS from his University employment and build his retirement through it, or to start a new membership in ORP. He chose the ORP option.

¶7 Farrier began receiving TRS retirement benefits in July 1999. TRB learned three months later that Farrier had accepted a full-time teaching position at the University, deemed him "inactive," and therefore suspended his benefits until the cessation of his employment. Farrier first contested TRB's decision to suspend his benefits to a hearing examiner and then to the District Court. He argued that his full-time employment with the University and ORP election failed to prohibit the inurement of his TRS monthly benefits. He further contended that the statutory prohibition on receiving TRS benefits while employed at the University and participating in ORP violated his right to equal protection under the Montana Constitution.

¶8 We ultimately determined that Farrier should remain classified as an inactive member of TRS and thus ineligible to receive benefits while employed full-time by the University and contributing to ORP. *Farrier*, ¶ 42. We declined to reach his equal protection argument and remanded the matter to the District Court on the grounds that neither the District Court in its order, nor the parties in their briefs, had informed the Court as to which particular statutes proved unconstitutional. *Farrier*, ¶ 44.

4

¶9 The District Court concluded on remand that no rational basis existed for treating Farrier differently from similarly situated retired teachers who proceeded to work in other public employment and lawfully received benefits from a different retirement system. Specifically, the court contrasted the application of § 19-21-202, MCA, and Rule 2.44.305, ARM, to retired teachers who accepted a second job with the University and elected to participate in ORP, with another retiree who obtained non-teaching public employment and participated in other state or private retirement programs. The District Court determined that the statutory scheme incorrectly deemed inactive the retired teacher by operation of law while the non-teaching public employee remained eligible to receive monthly TRS benefits and other pension benefits. The court concluded that the legislature's classification proved arbitrary and the statutory proscription denied Farrier the equal protection of the law. This appeal followed.

## STANDARD OF REVIEW

¶10 We review a district court's decision to grant summary judgment *de novo*, based on the same criteria applied by the district court. *Counterpoint, Inc. v. Essex Ins. Co.,* 1998 MT 251, ¶ 7, 291 Mont. 189, ¶ 7, 967 P.2d 393, ¶ 7 (citation omitted). As the material facts here remain uncontroverted, we limit our review to questions of law. *Brabeck v. Employers Mut. Cas. Co.*, 2000 MT 373, ¶ 8, 303 Mont. 468, ¶ 8, 16 P.3d 355, ¶ 8.

## DISCUSSION

¶11 TRB argues that the District Court incorrectly determined that § 19-21-202, MCA, and Rule 2.44.305, ARM, treat inactive TRS beneficiaries disparately without serving a legitimate state purpose. TRB maintains that the legislature reasonably designed its

5

retirement systems to condition receipt of retirement benefits on the employment decisions of its members in order to diminish the potential adverse impact on TRS's funding structure. TRB contends that when the legislature permitted the Board of Regents to offer an optional retirement program for the University faculty it anticipated the transposition between local school districts and the University and accordingly enacted protections for TRS. Specifically, the legislature sought to prevent an inactive TRS member from making adverse selections against TRS by receiving his or her benefits while accepting a teaching salary and earning a second pension under ORP.

¶12　　TRB also argues that Farrier remained similarly situated with other retirement members. All University employees, including Farrier, had to make a one-time irrevocable election to enroll as a member of either TRS or ORP.　Any divergent treatment of those University employees under the statutes remained reasonably related to legitimate governmental interests of preserving the TRS corpus and the State's actuarial tables and budget.

¶13　　All statutes carry with them a presumption of constitutionality and we construe statutes narrowly to avoid an unconstitutional interpretation if possible.　*State v. Lilburn* (1994), 265 Mont. 258, 266, 875 P.2d 1036, 1041 (citation omitted).　A party challenging the constitutionality of a statute bears the burden of proving the statute unconstitutional beyond a reasonable doubt.　*State v. Martel* (1995), 273 Mont. 143, 148, 902 P.2d 14, 17 (citation omitted).　We resolve any doubt in favor of the statute.　*Martel*, 273 Mont. at 148, 902 P.2d at 18.　In this case, Farrier assumes the burden of proving the statutes unconstitutional.

6

¶14    Article II, Section 4, of the Montana Constitution guarantees that "[n]o person shall be denied the equal protection of the laws." The Fourteenth Amendment to the United States Constitution and Article II, Section 4, of the Montana Constitution embody a fundamental principle of fairness that the law must treat similarly-situated individuals in a similar manner. *McDermott v. Montana Dept. of Corrections*, 2001 MT 134, ¶ 30, 305 Mont. 462, ¶ 30, 29 P.3d 992, ¶ 30. Article II, Section 4, of the Montana Constitution provides even more individual protection than the Equal Protection Clause in the Fourteenth Amendment of the United States Constitution. *Cottrill v. Cottrill Sodding Service* (1987), 229 Mont. 40, 42, 744 P.2d 895, 897.

¶15    When analyzing an equal protection challenge, we first identify the classes involved and determine whether they are similarly situated. *Henry v. State Compensation Ins. Fund*, 1999 MT 126, ¶ 27, 294 Mont. 449, ¶ 27, 982 P.2d 456, ¶ 27 (citation omitted). A law or policy that contains an apparently neutral classification may violate equal protection if in actuality it establishes "a device designed to impose different burdens on different classes of persons." *State v. Spina*, 1999 MT 113, ¶ 85, 294 Mont. 367, ¶ 85, 982 P.2d 421, ¶ 85 (citation omitted). Concomitantly, we need not deem legislation unconstitutional because it benefits a particular class so long as the law operates equally upon those within the class. *Gulbrandson v. Carey* (1995), 272 Mont. 494, 503, 901 P.2d 573, 579 (citation omitted).

¶16    Once the relevant classifications have been identified, we next determine the appropriate level of scrutiny. *Henry,* ¶ 29. We apply one of three levels of scrutiny when addressing a challenge under the Montana Constitution's Equal Protection Clause: strict scrutiny, middle-tier scrutiny, or the rational basis test. *Powell v. State Compensation Ins.*

7

*Fund*, 2000 MT 321, ¶¶ 17-19, 302 Mont. 518, ¶¶ 17-19, 15 P.3d 877, ¶¶ 17-19. Strict scrutiny applies if a statute implicates a suspect class or fundamental right. *McDermott*, ¶ 31. We apply middle-tier scrutiny if the law or policy affects a right conferred by the Montana Constitution, but is not found in the Constitution's Declaration of Rights. *McDermott*, ¶ 32. The rational basis test represents the third level of scrutiny. *McDermott*, ¶ 32. The rational basis test remains appropriate when neither strict scrutiny nor middle-tier scrutiny apply. *McDermott*, ¶ 32. Under the rational basis test, the law or policy must be rationally related to a legitimate government interest. *McDermott*, ¶ 32.

¶17 We previously have applied the rational basis standard in the context of an equal protection challenge to retirement benefit statutes. *Arneson v. State, By Dept. of Admin.* (1993), 262 Mont. 269, 864 P.2d 1245. In *Arneson*, we rejected applying intermediate scrutiny to a statute that provided an inflation adjustment of pension benefits for certain survivors and beneficiaries of state employees on the basis that the retirement benefit was not conferred by the Montana Constitution. *Arneson*, 262 Mont. at 272, 864 P.2d at 1247; *see also Gulbrandson*, 272 Mont. at 502-03, 901 P.2d at 578-79 (applying rational basis test to statute increasing retired judge's retirement benefits). We apply the rational basis standard here as the retirement statutes involve neither a suspect class, fundamental right nor a right conferred by the Montana Constitution.

¶18 Farrier's equal protection challenge remains premised on the disparity of treatment between the school teacher who participated in TRS and later worked as a University professor participating in ORP, and the school teacher who participated in TRS and subsequently worked in another public job with a different retirement system. Only the

8

former class of employees must choose between foregoing the pension associated with their prior job and foregoing accrual of additional pension benefits in their subsequent state public employment. In other words, the statutes penalize only the teacher who goes on to be a University professor and not the other way around or, similarly, goes on to work in another state job.

¶19 The legislature designed its retirement systems to condition receipt of retirement benefits on the employment decisions of its members, particularly in instances where retirees gain re-employment with the State or a subdivision thereof. *See* § 19-21-202, MCA; *see also* § 19-20-804(2), MCA (restricting the earnings up to one-third of the final salary of a retired TRS member who returns to public teaching). The classifications imposed through § 19-21-202, MCA, and Rule 2.44.305, ARM, remain narrowly drawn to cover only inactive TRS members who remain employed with the University and enrolled in ORP with the intent to limit multiple sources of state dollars being paid out at the same time and over a longer period of time for benefits, salaries and contributions for systems that have a common membership pool. Indeed, the Montana Constitution itself charges the legislature and TRB with a duty to keep the budget and retirement system actuarially sound. Art. VIII, Sec. 15, Mont. Const. (public retirement systems shall be funded by the governing boards on an actuarially sound basis). The District Court itself remarked that a teacher in Farrier's position would cause a drain on TRS and the public budget without the operation of the statutes.

¶20 Whether sound policy, there remains nothing irrational about the State deciding that at any one time a public employee should not both be drawing a new salary and accruing a

9

public pension and receiving an old public pension. Farrier responds that applying the statutory proscription only when the teacher's first pension remains with TRS proves irrational. We conclude, however, that when the job and its associated pension plan involves public employment, the State's interest in, and control over, the financial consequences proves a legitimate exercise of its constitutional mandate. *See Geil v. Missoula Irrigation Dist.*, 2004 MT 217, ¶ 18, 322 Mont. 388, ¶ 18, 96 P.3d 1127, ¶ 18 (holding that tax refunds remain a matter of legislative discretion). The legislature accommodated the University's need to offer an optional retirement program, but passed a number of provisions aimed at protecting TRS, its membership and its contributions. We conclude, therefore, that the District Court incorrectly determined that § 19-21-202, MCA, and Rule 2.44.305, ARM, violated Farrier's right to equal protection under the Montana Constitution.

¶21 None of the other retirement plans that Farrier cites as distinguishing his complaint from other similarly situated individuals were carefully considered by the legislature when weighing the financial impact on TRS and the State budget. Under § 19-21-202(2), MCA, all TRS members–including TRS retirees and TRS retirees who sought other employment and contributed to ORP–were given a choice to receive benefits by meeting statutory eligibility requirements. All retirees who chose to gain employment by the State or a political subdivision remain treated the same under the statutes. Indeed, Farrier was given the option of paying his retirement into either TRS or ORP and knowingly signed a notice of election that acknowledged that "by this election I become ineligible to be an active member of the [TRS] or to receive monthly benefits as provided by Title 19, Chapter 4, M.C.A. while I remain eligible to participate in the [ORP]." The legislature designed its

10

retirement conditions upon the expected employment decisions of participating members and we leave to its discretion the commission of devising a rationally related pension system in the same manner that we leave to its discretion the commission of devising a rationally related tax system. *See, e.g., Kottel v. State*, 2002 MT 278, ¶ 58, 312 Mont. 387, ¶ 58, 60 P.3d 403, ¶ 58.

¶22 We therefore reverse the District Court's determination and remand for further proceedings consistent with this Opinion.


/S/ BRIAN MORRIS


We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JIM RICE

Justice John Warner concurring.

¶23 I agree with the Court's determination of the standards of review in this case, as well as with the Court's analysis that the rational basis level of scrutiny must be applied to Farrier's constitutional challenge.

¶24 I also concur with the Court's decision that § 19-21-202, MCA, and Rule 2.44.305, ARM, do not, under these circumstances, violate Farrier's right to equal protection under the Montana Constitution.

¶25 In my view, the determination whether TRS and ORP are completely separate entities, or are connected together and dependant on each other, is the seminal, and dispositive, issue in this case. If the two retirement systems are separate there is no rational basis for treating Farrier, a former member of TRS, differently from a former member of any other separate state retirement system by denying him, and those teachers similarly situated, the benefits they have earned. However, as TRS and ORP are still connected, there is a rational basis for not allowing Farrier to draw his TRS benefits while working for the University System and contributing to ORP.

¶26 As noted by this Court, the District Court considered this case on two occasions. On the first occasion, Judge McCarter determined that "Farrier worked for two separate employers, at two separate jobs, and participated in two separate and distinct retirement plans." On the second occasion, Judge Sherlock adopted Judge McCarter's reasoning that TRS and ORP were two separate and distinct retirement plans, resulting in an equal protection violation. Judge McCarter missed the mark, and Judge Sherlock followed suit. The two retirement plans are not separate and distinct.

12

¶27 The Court reaches the conclusion that TRS and ORP "have a common membership pool." This statement, while at least partially correct, is not the determining factor. The members of the two retirement plans are all teachers of a sort. But, it is because TRS and ORP are intertwined, and TRS still is reliant on ORP to remain actuarially sound, that Farrier may be classified as an inactive member of TRS and be denied present payment of his TRS retirement.

¶28 TRS and ORP are established in chapters 20 and 21 of Title 19, MCA. The law establishing the two plans connects one to the other, and creates a financial dependence between the two systems. Section 19-20-621(1), MCA, provides as follows:

> Each employer within the university system with employees participating in the optional retirement program under Title 19, chapter 21, shall contribute to the teachers' retirement system a supplemental employer contribution sufficient to amortize, by July 1, 2033, the past service liability of the teachers' retirement system for the university system members.

¶29 Similarly, § 19-21-203(5), MCA, provides as follows:

> The board of regents shall make the supplemental contributions to the teachers' retirement system, as provided in 19-20-621, to discharge the obligation incurred by the Montana university system for the past service liability incurred by active, inactive, and retired members of the teachers' retirement system.

¶30 The connection between the two systems was established to protect against a projected inability of TRS to meet its obligations to remaining members when some teachers left to join ORP. This financial dependence of TRS on ORP is only a part of the overall scheme to keep TRS actuarially sound. The legislature also determined, when it created the two systems out of one, it was also necessary to assure the financial security of TRS. To achieve this, at least until 2033, a teacher situated like Farrier could not draw from TRS,

13

depleting its assets. Both the contributions by the board of regents to TRS, and the inability of Farrier and other teachers to become retired members of the system while they are active members of ORP, were determined by the legislature to be necessary to assure the actuarial soundness of TRS until 2033.

¶31    The two retirement systems are thus intertwined as TRS is still partially dependant on ORP. And, to this extent, the two retirement systems remain a single system which constitutes a class of employees that includes members of TRS and ORP. The legislature's rational basis for this class is to protect the actuarial soundness of TRS.

¶32    As stated by the Court, statutes are presumed to be constitutional. Farrier has presented no proof that the legislature did not have a rational basis for determining that TRS must remain connected to ORP in order to remain actuarially sound. Thus, the members of these two retirement systems are members of a class that are treated similarly and Farrier's equal protection argument must fail.


/S/ JOHN WARNER


Justice Jim Nelson joins in the foregoing concurrence.

/S/ JAMES C. NELSON