No. 04-829

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 93

THE CITY OF GREAT FALLS,

Plaintiff and Respondent,

v.

GAYLE ABRAHAM MORRIS,

Defendant and Appellant.

APPEAL FROM:     The District Court of the Eighth Judicial District,
In and For the County Cascade, Cause No. ADC 2004-238,
Honorable E. Wayne Phillips, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Kenneth R. Olson, Olson Law Office, Great Falls, Montana

For Respondent:

Honorable Mike McGrath, Attorney General; Mark Mattioli,
Assistant Attorney General, Helena, Montana

David V. Gliko, City Attorney; Tony P. Lucas, Assistant
City Attorney, Great Falls, Montana

Submitted on Briefs:  December 29, 2005

Decided:  May 4, 2006

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Following jury convictions in Great Falls Municipal Court on charges of misdemeanor driving under the influence (DUI) and careless driving, Gayle Abraham Morris filed an appeal in the Eighth Judicial District Court, Cascade County. The District Court affirmed the Municipal Court, and Morris filed an appeal with this Court.

¶2 We restate the issues as follows:

¶3 1. Does the statutory provision that a jury may infer from the refusal to take a sobriety test that the defendant was under the influence of drugs or alcohol unconstitutionally place the burden of proof on the defendant?

¶4 2. Did the Municipal Court err in not instructing the jury to distrust weaker and less satisfactory evidence?

¶5 3. Did the evidence support a conviction of careless driving?

## BACKGROUND

¶6 Morris owns a bar and supper club west of Great Falls. On December 21, 2003, after finishing a late shift at the bar, Morris consumed a couple amaretto drinks, performed his closing duties and began his drive home. Close to four in the morning, Officer Travis Palmer observed Morris driving eastbound on Tenth Avenue South in Great Falls. Although Officer Palmer's vehicle was equipped with a video camera

mounted on the dashboard, he did not activate the camera as he followed Morris.[1] The camera automatically began recording, however, when Officer Palmer turned on his overhead lights to initiate the traffic stop.

¶7     With no video of Morris's driving prior to being pulled over by Officer Palmer, the only evidence presented to the jury regarding the DUI and careless driving charges consisted of testimony from law enforcement and Morris. Officer Palmer testified that he observed Morris's vehicle swerve severely left to right, failing to maintain its presence in one lane. At one point, according to Officer Palmer, Morris made a sharp turn so as to avoid striking the median; he then turned sharply the other direction to compensate. Based on his six years of experience, Officer Palmer believed Morris to be impaired. Officer Palmer testified that when he approached Morris's vehicle after pulling him over, Morris rolled down his window two inches and immediately handed over his driver's license, insurance and registration information. According to Officer Palmer, Morris exhibited slurred speech, glassy red eyes and smelled of alcohol.

¶8     Sergeant Chris Hickman and Officer Shane Sorenson arrived at the scene shortly after the stop and similarly testified that Morris showed signs of alcohol impairment. When Officer Palmer asked Morris to perform field sobriety tests, Morris exited the car and stated that he would not do any of the tests. Upon being asked to remove the gum from his mouth, Morris had a difficult time, requiring several attempts.

---

[1]Officer Palmer testified that he never activates the video camera when following DUI suspects. He also commented that 95 percent of officers do not utilize the equipment.

¶9     At the police station, Morris again refused to perform sobriety tests and would not take a breath test.  After law enforcement read Morris his Miranda rights, Morris stated that he had three amaretto drinks at the end of his work shift.

¶10    At trial, Morris took the stand in his own defense, asserting that he drove safely on the evening of his arrest.  Morris also testified that he actually had less than three drinks—closer to two and a half—prior to the bar's 2:00 a.m. closing.  As a means of explaining his near collisions with the median, Morris told the jury that he regularly drives on the high side of the roadway, close to the median, in order to see traffic more easily.  As for his trouble removing the gum from his mouth, Morris testified that his difficulties had nothing to do with alcohol impairment, but simply the stickiness of the gum.  He blamed the glassy red appearance of his eyes on smoke from the bar.

¶11    After the jury convicted Morris, he appealed to the District Court issues regarding jury instructions and sufficiency of the evidence, all of which the court affirmed.  Morris now appeals the same issues to this Court.

## STANDARDS OF REVIEW

¶12    The trial court has broad discretion when it instructs the jury.  Statutes carry the presumption of constitutionality; therefore the party making the constitutional challenge bears the burden of proving, beyond a reasonable doubt, that the statute is unconstitutional, and any doubt must be resolved in favor of the statute.  Because the issue of whether a defendant's due process rights were violated is a question of law, we review the district court's conclusion to determine whether its interpretation of the law

4

was correct. *State v. McCaslin*, 2004 MT 212, ¶ 14, 322 Mont. 350, ¶ 14, 96 P.3d 722, ¶ 14.

¶13 When the defendant challenges the sufficiency of the evidence to support the conviction, the applicable standard of review is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *State v. Black*, 2003 MT 376, ¶ 29, 319 Mont. 154, ¶ 29, 82 P.3d 926, ¶ 29.

## DISCUSSION

¶14 **1.    Does the statutory provision that a jury may infer from the refusal to take a sobriety test that the defendant was under the influence of drugs or alcohol unconstitutionally place the burden of proof on the defendant?**

¶15 Over Morris's objection, the Municipal Court gave Jury Instruction 10, including language set forth in § 61-8-404(2), MCA:

> If the person under arrest refused to submit to one or more tests as provided in this section, proof of refusal is admissible in any criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a vehicle upon the ways of this state open to the public, while under the influence of alcohol, drugs, or a combination of alcohol and drugs. *The trier of fact* may *infer from the refusal that the person was under the influence. The inference is rebuttable.* [Emphasis added.]

¶16 Morris argues that § 61-8-404(2), MCA, as it applies to him, is unconstitutional because, in his view, the statute's language requires the State to submit no evidence of Morris's guilt beyond the fact that he refused the breathalyzer test. Having reviewed the jury instructions as a whole, as well as § 61-8-404, MCA, in its entirety, we disagree.

5

¶17 Turning to Jury Instruction 10, we note that a singular instruction cannot be judged in a vacuum.

> In analyzing evidentiary presumptions in a criminal case, the reviewing court must focus on the particular language used to charge the jury and determine whether a reasonable juror could have interpreted the challenged instruction as an unconstitutional presumption.
>
> "Analysis must focus initially on the specific language challenged, but the inquiry does not end there. If a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating [an unconstitutional presumption], the potentially offending words must be considered in the context of the charge as a whole. Other instructions might explain the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption."

*State v. Leverett* (1990), 245 Mont. 124, 127, 799 P.2d 119, 120-21 (quoting *Francis v. Franklin* (1985), 471 U.S. 307, 315, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344, 354).

¶18 Reviewing the instructions as a whole, which the court specifically directed the jury to do, we conclude that the burden of proof did not unconstitutionally shift to Morris. To begin with, the court unambiguously told the jury that Morris was "not required to prove his innocence or present any evidence." The court also instructed the jury to presume Morris innocent, unless the City of Great Falls proved through all of the evidence that Morris was guilty beyond a reasonable doubt. Additionally, the court directed the jury to carefully consider all testimony and only reach a guilty verdict if it determined, in light of the evidence, that the elements of the crime charged had been proven beyond a reasonable doubt. Based on the above, we conclude that § 61-8-404(2),

MCA, as applied to Morris by Instruction 10, did not impermissibly shift the burden of proof onto Morris.

¶19 In addition, we note that all statutes carry with them a presumption of constitutionality, and we construe statutes narrowly to avoid an unconstitutional interpretation if feasible. *Farrier v. Teacher's Retirement Board*, 2005 MT 229, ¶ 13, 328 Mont. 375, ¶ 13, 120 P.3d 390, ¶ 13. "Whenever possible, [this] Court will adopt statutory construction which renders challenged statutes constitutional rather than a construction which renders them invalid. When construing a challenged statute, the Court will read and interpret the statute as a whole, without isolating specific terms from the context in which they are used by the Legislature." *State v. Martel* (1995), 273 Mont. 143, 148, 902 P.2d 14, 17 (citations omitted). If there is any doubt regarding constitutionality, we resolve the issue in favor of the statute. *Farrier*, ¶ 13. Additionally, we interpret statutes so at to give effect to the legislative will, while avoiding an absurd result. *Colmore v. Uninsured Employers' Fund*, 2005 MT 239, ¶ 82, 328 Mont. 441, ¶ 82, 121 P.3d 1007, ¶ 82.

¶20 Section 61-8-404, MCA, states in pertinent part:

> **61-8-404. Evidence admissible – conditions of admissibility**. (1) Upon the trial of a criminal action or other proceeding arising out of acts alleged to have been committed by a person in violation of 61-8-401, 61-8-406, 61-8-410, or 61-8-805:
>
> (a) evidence of any measured amount or detected presence of alcohol, drugs, or a combination of alcohol and drugs in the person at the time of a test, as shown by an analysis of the person's blood or breath, is admissible. A positive test result does not, in itself, prove that the person was under the influence of a drug or drugs at the time the person was in control of a motor vehicle. A person may not be convicted of a violation of

7

61-8-401 based upon the presence of a drug or drugs in the person *unless some other competent evidence exists* that tends to establish that the person was under the influence of a drug or drugs while driving or in actual physical control of a motor vehicle within this state.

. . . .

(2) If the person under arrest refused to submit to one or more tests as provided in this section, proof of refusal is admissible in any criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a vehicle upon the ways of this state open to the public, while under the influence of alcohol, drugs, or a combination of alcohol and drugs. The trier of fact may infer from the refusal that the person was under the influence. The inference is rebuttable.

(3) The provisions of this part *do not limit the introduction of any other competent evidence* bearing on the question of whether the person was under the influence of alcohol, drugs, or a combination of alcohol and drugs.

Section 61-8-404, MCA (emphasis added).

¶21 Analyzing this statute as a whole, we conclude that subsection (2) must be read as requiring the production of other competent corroborating evidence of a DUI. In light of the fact that subsection (1)(a) requires corroborating evidence when a person actually takes a drug test, to interpret subsection (2) as not requiring corroborating evidence when a person refuses to take the test would create an absurd result. In this case, the State presented corroborating evidence that Morris was driving while under the influence, including testimony from law enforcement that Morris exhibited erratic driving, slurred speech, red eyes and the odor of alcohol on his breath.

¶22 Moreover, we note that the admissibility of a defendant's refusal to take a breathalyzer test presupposes other competent evidence in the form of probable cause to

8

make the arrest in the first instance—in this case, poor driving, slurred speech, red eyes and the odor of alcohol. Although Morris provides an explanation for his behavior and appearance, he has not challenged the probable cause to make the arrest.

¶23 We hold that the court did not err in instructing the jury on the provisions of § 61-8-404(2), MCA.

¶24 **2. Did the Municipal Court err in not instructing the jury to distrust weaker and less satisfactory evidence?**

¶25 At trial, the Municipal Court denied the following jury instruction proposed by Morris:

> If weaker and less satisfactory evidence is offered and it appears that it is within the power of the party to offer stronger and more satisfactory evidence, it is presumed that the evidence withheld would be adverse to the party. The evidence that is offered should be viewed with distrust.

¶26 Morris argued to the District Court that the jury should have been instructed on the above language because, according to Morris, the State failed to offer the best evidence to prove Morris was driving under the influence when Officer Palmer chose not to videotape Morris's driving. Morris acknowledges that there is no video of Morris driving, but nonetheless argues that the State violated "the spirit" of § 26-1-602(6), MCA, by not utilizing the video equipment. The District Court rejected this argument on the grounds that Morris failed to cite authority "other than his stretched construction of § 26-1-602, MCA."

¶27 On appeal, Morris again fails to provide any legal authority in support of his argument. Regardless, § 26-1-602(6), MCA, presumes the existence of actual and

identifiable evidence, which did not exist in this case. While Morris argues that the State *should have* had a video recording of his driving, the fact remains that the State did not have such evidence. The District Court correctly affirmed the Municipal Court's refusal of Morris's proposed instruction on distrusting weaker evidence.

¶28 **3.      Did the evidence support a conviction of careless driving?**

¶29     Morris argues that the evidence presented at trial failed to support a conviction of careless driving, pursuant to § 61-8-302(1), MCA, which states:

> A person operating or driving a vehicle on a public highway shall drive it in a careful and prudent manner that does not unduly or unreasonably endanger the life, limb, property, or other rights of a person entitled to the use of the highway.

¶30     Morris contends that the evidence presented at trial did not support a conviction under the above statutory language. Specifically, Morris argues that because he did not come into close proximity to any other vehicle, driver or pedestrian, the evidence does not establish proof beyond a reasonable doubt that he drove in a legally careless manner. The District Court was correct in rejecting this argument. Section 61-8-302(1), MCA, requires careful and prudent driving at all times. The statutory concern with "endanger[ment]" does not require that the driver come into close proximity to another vehicle or pedestrian for there to be carelessness. In light of the evidence before the jury, the District Court correctly concluded that a rational jury could determine that Morris drove carelessly.

10

¶31    Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:


/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS