No. 88-460

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

THE CITY OF MISSOULA,

       Plaintiff and Respondent,

  -vs-

CASEY FOREST,

       Defendant and Appellant.

---

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Ian Christopheron, Missoula, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        Judy Wang, City Attorney's Office, Missoula, Montana

---

Submitted on Briefs:  Jan. 5, 1989

Decided: February 14, 1989

Clerk

FILED
'88 FEB 14 AM 10 07
ED SMITH CLERK
MONTANA SUPREME COURT
Filed:

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Fourth Judicial District Court, Missoula County, Montana. Defendant/appellant, Casey Forest, was found guilty by the District Court, after a jury trial, of Driving Under the Influence of Alcohol, a misdemeanor, in violation of § 61-8-401, MCA. We affirm.

On July 22, 1987, appellant joined friends in a birthday celebration at Connie's Lounge. After consuming a few beers, appellant and two members of the group left the bar, intending to drive home. The two friends rode a motorcycle, while appellant drove his Nissan truck. The vehicles proceeded south on Higgins Avenue at a high rate of speed, weaving between cars as they sped down the street. Near the intersection of Sixth and Higgins avenues, the motorcycle veared into the rearside panel of appellant's pickup, causing the motorcycle to spin and slide. Both riders fell from the motorcycle and were later taken by ambulance to a hospital. Appellant, uninjured in the accident, drove to a nearby parking lot.

Missoula Police Officer Clifford LePiane investigated the collision. He testified at trial that upon arrival at the scene, he observed the appellant standing next to his truck in the parking lot. Officer LePiane described appellant as having a flushed face, red watery eyes, somewhat slurred speech, and a moderate smell of alcohol on his breath. In addition, appellant exhibitied a boisterous and argumentative behavior. Witnesses identified appellant as having been involved in the accident and described the driving as "big time reckless." Officer LePiane arrested appellant for driving under the influence of alcohol, a violation of § 61-8-401, MCA.

2

At the Missoula Police Department, appellant was immediately advised of his rights under Montana's Implied Consent Law. Appellant refused to take the blood-alcohol test requested by Officer LePiane. However, upon completion of the "booking" procedure, appellant withdrew his refusal and consented to the test. Results of the Intoxilizer 5000 test revealed a blood-alcohol content of .137.

The entire procedure, including initial refusal and later consent to administer the test, was recorded on video tape. However, at one point during the procedure, police officers turned off the video camera to allow an independent accident investigator to obtain information from the appellant. Because of the interruption, a blank portion followed by a brief segment of a prior unrelated DUI appeared on the video tape. After the information was obtained, police restarted the video camera, administered Miranda warnings and continued the booking procedures.

On November 13, 1987, prior to trial at the Municipal Court level, respondent filed a separate alternative charge of Driving With a Blood-Alcohol Content over .10, "per se," a violation of § 61-8-406, MCA. On December 15, 1987, appellant was convicted of the DUI charge. Appellant appealed to the District Court.

Prior to trial in the District Court, appellant filed numerous motions. While most were denied, the District Court Judge granted a motion to suppress the portion of the video tape prior to the administration of Miranda warnings. The lower court ruled that while evidence of appellant's refusal to take the breathalizer test was admissible, other statements made prior to receiving the Miranda warnings were protected communications within the Fifth Amendment. The evidence of appellant's refusal could be introduced by alternative means.

3

On May 2, 1988, after a jury trial consolidated the two charges, the District Court entered judgment finding appellant guilty on the DUI charge. Appellant appeals to this Court, presenting four issues for our review:

1. Did probable cause exist to arrest appellant for driving under the influence of alcohol?

2. Was it a violation of the United States and Montana Constitutions to admit evidence of appellant's refusal to take the Intoxilizer 5000 test under Montana's Implied Consent Law?

3. Was it error to admit the video tape?

4. Upon appeal from the Municipal Court conviction, does the District Court retain jurisdiction and ability to convict on the alternative charges of Driving Under the Influence and Driving with a Blood Alcohol over .10, "per se?"

ISSUE I

Appellant argues Officer LePiane lacked probable cause to arrest on the DUI charge, contending that absent field sobriety tests, no evidence existed to show the requisite impairment of facilities. Section 61-8-401, MCA. However, our review of the record leads to a contrary conclusion.

Probable cause must be based on an assessment of all relevant circumstances, evaluated in light of the knowledge of a trained law enforcement officer. State v. Ellinger (Mont. 1986), 725 P.2d 1201, 43 St.Rep. 1778. More than mere suspicion, probable cause requires facts and circumstances sufficient to warrant a reasonable person to believe that a suspect has committed an offense. State v. Lee (Mont. 1988), 754 P.2d 512, 45 St.Rep. 903. As our prior holdings demonstrate, probable cause is a concept encompassing a spectrum of varying circumstances.

4

In the instant case, the record is replete with evidence supporting a DUI offense. The accident was cause by reckless and dangerous conduct, resulting in serious injuries. Officer LePiane observed appellant's bloodshot eyes and flushed complexion, and smelled a moderate odor of alcohol on appellant's breath. In addition, based on prior dealings with appellant, Officer LePiane recollected appellant's behavior as calm and polite, a dramatic change from the argumentative behavior exhibited after the accident.

Certainly, field sobriety tests are a tool which can assure the officer that the person is in fact under the effect of intoxicating beverages. However, the absence of such tests do not fatally flaw the probable cause determination. As discussed above, sufficient evidence existed to establish probable cause for arrest. We find no merit in appellant's first contention.

## ISSUE II

This Court has long adhered to the rule that neither the results of the breathalizer test nor a defendant's refusal to submit to the breathalizer test are communications protected by the the Fifth Amendment. State v. Jackson (1983), 206 Mont. 338, 672 P.2d 255, citing South Dakota v. Neville (1983), 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 694; State v. Armfield (1984), 214 Mont. 229, 693 P.2d 1226. Therefore, our discussion of the principle will remain brief.

As a part of the program to deter drinkers from driving, Montana has enacted an Implied Consent Law. The statute declares that any person who operates a motor vehicle within the State shall be deemed to have given his consent to a chemical test to determine the alcohol content of his blood if arrested by a police officer for driving under the influence of alcohol. Section 61-8-402(1), MCA. The test is

5

not compelled, yet refusal results in attendant penalties, including an immediate seizure of one's driver's license, § 61-8-402(3), MCA, and the admissibility of the refusal upon trial for DUI. Section 61-8-404(2), MCA. Appellant contends the statute cannot override Miranda guarantees. As such, appellant argues evidence of his initial refusal, prior to Miranda warnings, must be suppressed. We disagree.

In discussing the origins of the rights protected by Miranda warnings, we stated:

> The Massiah, Escobedo and Miranda decisions link the Fifth Amendment privilege to the Sixth Amendment's right to counsel. Escobedo and Miranda sought to preserve the privilege against self-incrimination through protection of defendant from the coercive aspects of custodial interrogation . . . Massiah sought similar protections where uncounseled and undisclosed post-indictment non-custodial interrogation elicited incriminating statements . . . All three decisions characterize the right to assistance of counsel as a means of preserving defendant's privilege against self-incimination --his absolute right to refuse to testify or communicate. (Citations omitted.)

Armfield, 693 P.2d at 1229. The Fifth Amendment affords no protection against the prosecutor's use of fingerprints, measurements, handwriting, voice identification or blood tests; all constitute "physical or real" evidence. Schmerber v. California (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. Similarly, appellant's claim of constitutional prohibition against self-incrimination by the admission of his refusal to submit to the blood-alcohol test is foreclosed by the Neville decision, which defined the refusal as non-testimonial conduct. Further, the statements made prior to Miranda warnings which fell outside the scope of the

6

Implied Consent Law were properly suppressed by the District Court and cured any potential Miranda violations.

## ISSUE III

As stated earlier in our opinion, the video tape recording of appellant's DUI booking was briefly interrupted by an independent accident investigator. Appellant contends the video recording's interruption and the revealed segment of an unrelated DUI booking constitutes improper editing of the video.

The trial court judge has wide discretion in conducting courtroom procedures, and in determining adequacy of foundation for admission of evidence. State v. Austad (1982), 197 Mont. 70, 641 P.2d 1373. Throughout our review, we remain ever mindful of this standard.

State v. Warwick (1972), 158 Mont. 531, 494 P.2d 627, remains the seminal case regarding the admission of recordings requiring:

> "(1) a showing that the recording device was capable of taking testimony,
>
> (2) a showing that the operator of the device was competent,
>
> (3) establishment of authenticity and correctness of the recording,
>
> (4) a showing that changes, additions, or deletions have not been made,
>
> (5) a showing of the manner of the preservation of the recording,
>
> (6) identification of the speakers,
>
> (7) a showing that the testimony elicited was voluntarily made without any kind of inducement."

<u>Warwick</u>, 494 P.2d at 633, citing 58 A.L.R.2d 1204, Admissibility of Sound Recordings in Evidence, § 2, pp. 1027, 1028. The record reveals testimony elicited to satisfy the foundation requirements.

Q Was a video tape taken of Casey Forest's DUI booking?

A Yes, it was. . .

Q Is the Missoula City video equipment capable of making a visual and audible record?

A Yes, it is.

Q Who operated the test?

A Officer Gunter.

Q Is Officer Gunter capable of operating Missoula's video equipment?

A Yes, he is.

Q Officer LePiane, I am handing you what has been marked for identification purposes as Exhibit No. 1. Do you recognize it?

A Yes, I do . . . this is the audio-video tape of the Casey Forest DUI booking procedure . . .

Q How is it identified?

A It's marked with a D-48. And it's also logged into our records under that number.

Q Where has it been stored since July 22, 1987?

A In the police evidence vault at City Hall . . .

Q  Does it fairly and accurately depict the booking procedure conducted with Casey Forest on July 22, 19[87]?

A  Yes . . .

Q  Has it had any section added or has it been changed since July 22, 1987?

A  No . . .

Q  What part of the video -- what part of the booking procedure had been completed when the video tape is set to begin?

A  The reading of the implied consent law, my asking Mr. Forest if he wished to take the test, and the refusal.

Q  Who is represented on the video tape?

A  Myself and Casey Forest.

Q  Was Casey Forest notified that he was being video taped?

A  Yes, he was.

After the testimony, the District Court admitted the video tape.  The only portion unavailable to the jury was that excluded by the judge's suppression order.  Appellant asserts no changes, deletions or additions occurred after he was advised of his Miranda rights.  In its discretion, the lower court found the video portion after the interruption sufficiently trustworthy as to be admissible as evidence at trial.  We see no reason to hold otherwise.


ISSUE IV

Appellant contends the District Court's prosecution of both actions, DUI and the "per se" offense was a violation of the United States and Montana Constitutions' prohibition

against double jeopardy. This argument relies on misstatements of fact.

The record reveals the appellant was convicted of the DUI charge at the municipal court level; the "per se" charge was not adjudicated. On appeal to the District Court, the case was tried anew based on the municipal court file. Section 46-17-311, MCA; State v. Benson (1931), 91 Mont. 109, 5 P.2d 1045. While the same acts may establish the commission of an offense under both DUI and "per se" statutes, a defendant may only be convicted of one offense. Section 61-8-408, MCA. We find no merit in appellant's contention.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

10