DA 06-0553

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 88

STATE OF MONTANA,

   Plaintiff and Appellee,

 v.

GERRAD MICHAUD,

   Defendant and Appellant.

APPEAL FROM:  District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 2005-551
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

   Richard R. Buley, Tipp & Buley, Missoula, Montana

   For Appellee:

   Hon. Mike McGrath, Montana Attorney General, Carol E. Schmidt,
Assistant Attorney General, Helena, Montana

   Fred Van Valkenburg, Missoula County Attorney, Suzy Boylan-Moore,
Deputy County Attorney, Missoula, Montana

      Submitted on Briefs: July 25, 2007

         Decided: March 18, 2008

Filed:

_____
        Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     In April 2006 a jury in the Fourth Judicial District Court, Missoula County, convicted Gerrad Michaud of the misdemeanor offense of Operating a Motor Vehicle While Under the Influence of Alcohol or Drugs.  He appealed his conviction on several grounds.  We affirm in part and reverse and remand in part.

## ISSUES

¶2     A restatement of the issues on appeal is:

¶3     Did the District Court abuse its discretion when it limited counsels' voir dire time to fifteen minutes?

¶4     Did the District Court abuse its discretion by allowing police officer testimony pertaining to the Horizontal Gaze Nystagmus (HGN) test?

¶5     Does the inference contained in § 61-8-404(2), MCA, whereby a jury may infer that a defendant was driving under the influence of alcohol from his refusal to take a sobriety test, violate a defendant's due process rights?

¶6     Does the inference contained in § 61-8-404(2), MCA, deny a defendant his right to counsel at a critical stage of the prosecution or violate a defendant's right not to be compelled to give testimony against himself?

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     On August 20, 2005, a motorist observed a truck being driven erratically along Highway 200 near Missoula, Montana.  After following the truck for some distance, the motorist called 911 to notify authorities.  Officer Johnson responded to the call and upon seeing a vehicle that matched the description given by the motorist began to follow the

2

vehicle. According to the Officer's report, he saw the truck cross the white fog line repeatedly and noticed that the license plate was blocked and the truck was missing a driver side mirror. Before Johnson executed a stop, the truck, subsequently determined to be driven by Michaud, pulled off the road and into a parking lot. At that time, Johnson activated his vehicle's overhead emergency lights and pulled in behind Michaud.

¶3 At trial, Johnson explained that he approached the vehicle and when speaking to Michaud, noticed the truck smelled of alcohol. Johnson's incident report also indicated that he smelled alcohol on Michaud's breath. When Michaud opened the door to get in the back of the truck for his wallet, the officer saw a beer can in the truck cab. Johnson testified that Michaud had difficulty maintaining his balance when he got out of the truck and needed to use his truck to stabilize himself. Michaud volunteered that there was an outstanding warrant on him but denied drinking when Johnson asked him. Shortly thereafter, however, he confessed that he had been drinking earlier in the day while tubing on a river. Johnson asked Michaud to perform three field sobriety tests—the HGN, the walk and turn, and the one-legged stand. Michaud did not perform well on any of these tests. After informing Michaud of the consequences of refusing to take a breath test, Johnson asked Michaud to take a portable breath test. Michaud refused.

¶4 Johnson arrested Michaud on the outstanding warrant and for driving while under the influence of alcohol and transported him to the Missoula County jail. Upon arrival Johnson had Michaud take the three field sobriety tests again and again Michaud failed these tests. Johnson also asked Michaud to take the breath test and again Michaud refused. Michaud was charged with driving under the influence of alcohol or drugs.

¶5 Michaud was convicted in Justice Court in November 2005 for second offense misdemeanor driving under the influence. He appealed this conviction immediately to the Fourth Judicial District Court in Missoula County where a jury trial was held on April 28, 2006. At the commencement of proceedings, the District Court judge informed the attorneys that each attorney would have fifteen minutes to voir dire the jury. He also indicated that it was his practice to ask a standard set of questions during voir dire as well. Michaud objected to the fifteen-minute limitation but the District Court overruled the objection. At the conclusion of the trial, the jury convicted Michaud of misdemeanor driving under the influence.

¶6 Michaud filed a timely appeal.

¶7 Additional facts will be presented as needed for our analysis.

## STANDARDS OF REVIEW

¶8 It is well established that "[a]bsent an abuse of discretion . . . the trial judge has great latitude in controlling voir dire." *State v. LaMere*, 190 Mont. 332, 339, 621 P.2d 462, 466 (1980). We therefore review the District Court's imposition of a time limit on voir dire to determine whether this limitation constitutes an abuse of discretion.

¶9 We review rulings on the admissibility of evidence, including oral testimony, under an abuse of discretion standard. We leave the determination of the relevancy and admissibility of evidence to the sound discretion of the trial judge and we will not overturn it absent a showing of abuse of discretion. *State v. Damon*, 2005 MT 218, ¶ 12, 328 Mont. 276, ¶ 12, 119 P.3d 1194, ¶ 12 (citations omitted).

4

¶10    Statutes enjoy a presumption of constitutionality; therefore the party making the constitutional challenge bears the burden of proving, beyond a reasonable doubt, that the statute is unconstitutional, and any doubt must be resolved in favor of the statute.  When reviewing a question of constitutional law, including the issue of whether a defendant's due process rights were violated, we review the district court's conclusion to determine whether its interpretation of the law was correct.  *Shammel v. Canyon Resources Corp.*, 2007 MT 206, ¶ 7, 338 Mont. 541, ¶ 7, 67 P.3d 886, ¶ 7; *City of Great Falls v. Morris*, 2006 MT 93, ¶ 12, 332 Mont. 85, ¶ 12, 134 P.3d 692, ¶ 12 (citations omitted).

¶11    Lastly, we review jury instructions in a criminal case to determine whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case.  Further, we recognize that a district court has broad discretion when it instructs a jury, and we therefore review a district court's decision regarding jury instructions to determine whether the court abused that discretion.  *State v. Swann*, 2007 MT 126, ¶ 32, 337 Mont. 326, ¶ 32, 160 P.3d 511, ¶ 32 (citation omitted).

## DISCUSSION

¶12    *Did the District Court abuse its discretion when it limited counsels' voir dire time to fifteen minutes?*

¶13    Michaud argues that the District Court denied him a fair trial before an impartial jury by limiting his right to voir dire the jury to fifteen minutes.  He asserts that the limited time made it impossible for him "to examine a 12 person jury panel for possible bias and prejudice," to determine if jurors should be excused for cause, and to exercise peremptory challenges "intelligently."  He argues that § 46-16-114(2), MCA, allows a

5

trial court to limit voir dire only "if the examination is improper." He opines that because the court imposed a time limit before questioning began, there was no opportunity for such impropriety to occur, and therefore the court abused its discretion. Michaud further maintains that the court limited the time for voir dire for purely expeditious reasons, which is contrary to this Court's observation in *State v. Nichols*, 225 Mont. 438, 734 P.2d 170 (1987).[1]

¶14    The State counters that the court offered adequate time for voir dire, in light of the court's examination of prospective jurors. It points to extra-jurisdictional cases holding that courts have the discretion to set reasonable limits and that Michaud was not deprived of his constitutional right. It proposes that we adopt a four-prong test used by the Oregon Supreme Court in determining whether a trial court had abused its discretion by placing time limits on voir dire. Under the circumstances of this case, we need not adopt this test to reach a resolution.

¶15    As a six-person jury was required to hear this misdemeanor case, twelve prospective jurors were seated initially for voir dire. The District Court indicated, prior to voir dire and outside the presence of potential jurors, that each side would have fifteen minutes to conduct voir dire after the court had conducted its voir dire. The judge noted that, prior to trial, he had invited each side to offer written voir dire questions but that neither counsel had accepted the invitation. The court explained that the time spent on a

---

[1] In *Nichols*, we stated, "The voir dire process, especially in cases given a great amount of publicity, is essential to ensure that defendant is adjudged by fair and impartial jurors. It is this objective for which the court must strive, not expeditious selection of a jury." *Nichols*, 225 Mont. at 445, 734 P.2d at 174.

"for cause" challenge would not be counted nor would time spent with individual prospective jurors discussing relevant "privacy" issues be counted against the fifteen-minute limit.

¶16 At this time, Michaud's counsel objected to the time limit based on *Nichols* and the amount of publicity generally given to "drinking and driving" concerns. The court remarked that it was unaware of any specific publicity surrounding this case but that it would pursue that concern in its voir dire. The judge indicated multiple times that he would "remain flexible throughout the [voir dire] process" but believed it was necessary that they were "cognizant of the amount of time that jurors spend in these cases and the need to keep cases moving." He agreed to ask additional questions presented by counsel so that counsel could preserve their fifteen minutes for other questions. Neither Michaud's lawyer nor the State's attorney presented questions for the judge to ask.

¶17 The court asked the prospective jurors questions pertaining to the following matters: (1) whether all were Missoula County residents; (2) had any been convicted of malfeasance in office or a felony or other high crime; (3) whether any knew the attorneys or the defendant, and if so, would any existing relationship affect how the juror viewed the case or weighed the evidence or the juror's ability to be fair; (4) if any relationships among the prospective jurors would prevent them from working together; (5) whether any were employed by law enforcement or had a close relationship with someone in law enforcement, and if so, whether this would affect the juror's ability to listen and evaluate testimony in this case; (6) whether any had experience with DUI in their personal lives or the lives of a close friend or family member, and if so, if such experience would

7

predispose them to one side in this case; (7) whether any had previously served on a jury, and if so, what kind of case, what was the outcome and whether there was anything about this prior service that would affect their ability to be a fair and impartial juror; (8) if they understand the concepts of "presumed innocent," "proof beyond a reasonable doubt," the State's burden, and the right of the defendant to refrain from testifying; (9) whether any were members of the Fully Informed Jury Movement or wished to be; (10) whether any had heard about the defendant and this offense; (11) whether any had had previous experience with the justice system that might affect their ability to meaningfully participate in this proceeding; and (12) whether any had any particular life experience or issue that would divert them from the case. During private discussions with individual jurors conducted during the court's voir dire, both counsel were able to ask specific questions of the jurors that allowed the attorneys to exercise cause and peremptory challenges.

¶18 Following the court's voir dire, the prosecutor conducted voir dire within the allotted fifteen minutes. Subsequently Michaud's counsel conducted voir dire. Michaud's attorney questioned prospective jurors about the possibility of bias toward the State's less experienced attorney and the need to hold the State to its burden of proof. He questioned the jury pool about the existence of bias against criminal defense lawyers in general and prejudice derived from aggressive advertising campaigns against drinking and driving. Counsel also queried whether the jurors believed that erratic driving could be caused by something other than drinking, such as talking on a cell phone, and whether

they could believe someone could be innocent even though charged with a crime. His closing questions to the jury pool addressed reasonable doubt.

¶19 At thirteen minutes, the court notified counsel that he had two minutes remaining in his voir dire. At fifteen minutes, counsel was told that his time was up. He enquired whether he had asked an improper question, was told that he had not, and pressed for additional time. The court allowed him to ask two more questions and upon completion, counsel passed the panel for cause.

¶20 During the voir dire process, two jurors were excused for cause and each side challenged three jurors apiece, all of whom were dismissed.

¶21 The purpose of voir dire in a criminal case is to determine the existence of a prospective juror's partiality. As such, adequate questioning in voir dire enables counsel to properly raise a challenge for cause and to intelligently exercise peremptory challenges. *State v. Lamere*, 2005 MT 118, ¶ 15, 327 Mont. 115, ¶ 15, 112 P.3d 1005, ¶ 15 (citations omitted). However, it is also the responsibility of the trial court to oversee the administration of trials and proceedings. *In re Marriage of Weber*, 2004 MT 206, ¶ 14, 322 Mont. 324, ¶ 14, 95 P.3d 694, ¶ 14 (citations omitted); *Hegwood v. Mont. Fourth Jud. Dist. Court*, 2003 MT 200, ¶ 16, 317 Mont. 30, ¶ 16, 75 P.3d 308, ¶ 16 (citations omitted). While we do not encourage courts to impose time limits on voir dire in the name of expeditiousness, we conclude that under the circumstances here, the court did not abuse its discretion in imposing reasonable time limits on voir dire.

¶22 This was a misdemeanor DUI case. While this fact alone may not justify a time limitation, it is a relevant factor. More importantly, the District Court engaged in a

9

comprehensive voir dire before turning the jury over to counsel; thus, many of the areas of inquiry which counsel would otherwise normally explore were covered in advance by the court. In addition, counsel had the opportunity to engage in a colloquy with the jurors regarding potential bias and prejudice as well as the jury's understanding of the concepts of "reasonable doubt," "innocent until proven guilty," and "burden of proof." For these reasons, we conclude the District Court did not abuse its discretion in imposing a fifteen-minute limit on counsels' voir dire.

¶23 *Did the District Court abuse its discretion by allowing police officer testimony pertaining to the Horizontal Gaze Nystagmus (HGN) test?*

¶24 Michaud argues that the District Court abused its discretion when it allowed the arresting officer to testify as to how he administered the HGN test to Michaud and the results, or inferences, from the test. He maintains that the State did not establish a proper foundation upon which Johnson, a non-expert, could offer this evidence. The State acknowledges that it failed to lay a proper foundation and that it did not establish a scientific basis for the reliability of the test results; it argues, however, that the admission was harmless error because it constituted cumulative evidence of Michaud's guilt. We first determine whether the District Court abused its discretion by admitting the HGN evidence.

¶25 The HGN test is a field sobriety test frequently administered by law enforcement. As we explained in *City of Missoula v. Robertson*, 2000 MT 52, 298 Mont. 419, 998 P.2d 144,

> [N]ystagmus is the involuntary jerking of the eyeball resulting from the body's attempt to maintain balance and orientation. Nystagmus may be

10

aggravated by central nervous system depressants such as alcohol or barbiturates. Furthermore, the inability of the eyes to maintain visual fixation as they are turned to the side is known as horizontal nystagmus. Thus, the test is conducted by instructing a person to focus on an object, such as a pen, while the officer moves the object back and forth horizontally, and observes the person's eye movements.

The test is scored by counting the number of "clues" of intoxication exhibited by each eye with a maximum score of six (6), meaning each eye exhibited the three clues for which the examiner was looking. Michaud scored six on the HGN, indicating impairment.

¶26 We first addressed the admissibility of HGN evidence in *State v. Clark,* 234 Mont. 222, 762 P.2d 853 (1988), when we noted that:

The admission of this type of evidence is a matter of first impression in this jurisdiction. Several states . . . have allowed its admission as one method of indicating impairment. We adopt the position of these courts in allowing the admission of the tests. The pivotal question now becomes one of proper foundation (internal citations omitted).

*Clark*, 234 Mont. at 226, 762 P.2d at 856.

¶27 We determined in *Clark* that M. R. Evid. 702 governed admissibility of expert testimony, and held that courts should admit all relevant scientific evidence in the same manner as other expert testimony and allow its weight to be attacked by cross examination or refutation. We implied, rather than expressly held, that expert testimony regarding scientific reliability was required to establish a proper foundation. Ten years later, we clarified our position in *Clark* with *Hulse v. State, Dept. of Justice*, 1998 MT 108, 289 Mont. 1, 961 P.2d 75, wherein we expressly stated the requirements of a proper foundation for the admissibility of HGN evidence.

11

¶28     In *Hulse*, we stated that before an arresting officer may testify to HGN test results, the evidence must show that the arresting officer was properly trained to administer the HGN test and that he or she administered it in accordance with that training. *Hulse*, ¶ 70. We also required introduction of evidence regarding the underlying scientific basis for the HGN test. *Hulse*, ¶ 70. We concluded that although the arresting officer was trained to administer the HGN test, and administered the test according to his training, nothing in the evidence established that the arresting officer had special training, education, or adequate knowledge qualifying him as an expert to explain the correlation between alcohol consumption and nystagmus, the underlying scientific basis of the HGN test. Accordingly, we concluded there was insufficient foundation for the admission of evidence concerning the HGN test, and that the district court abused its discretion when it summarily denied Hulse's motion in limine and allowed the officer to testify as to Hulse's HGN test results. *Hulse*, ¶ 72. See also *Bramble v. State, Dept. of Justice, MVD*, 1999 MT 132, 294 Mont. 501, 982 P.2d 464, and *State v. Van Kirk*, 2001 MT 184, ¶ 28, 306 Mont. 215, ¶ 28, 32 P.3d 735, ¶ 28.

¶29     The State acknowledges that it failed to establish the necessary foundation for admission of Johnson's testimony on the HGN results or the inference he drew from these results; therefore, under *Hulse*, we conclude the District Court abused its discretion in admitting this evidence. We next determine, however, whether this was reversible error.

¶30     In *Van Kirk*, we set forth a test for determining whether an error prejudices a defendant's right to a fair trial and is therefore reversible. The first prong of the test

requires us to assess whether an error is "structural" or "trial" error. *Van Kirk*, ¶ 37. Structural error is error that "affects the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Van Kirk*, ¶ 38. On the other hand, trial error is error that typically occurs during the presentation of a case to the jury. *Van Kirk*, ¶ 40. Further, as we noted in *Van Kirk*, trial error is "amenable to qualitative assessment by a reviewing court for prejudicial impact relative to the other evidence introduced at trial." *Van Kirk*, ¶ 40.

¶31 We conclude that the error complained of by Michaud is trial error and therefore "is not presumptively prejudicial and . . . is not automatically reversible." *Van Kirk*, ¶ 40. Because this is trial error, our analysis proceeds to *Van Kirk's* second step—a determination of whether the admission of the HGN evidence was harmless or prejudicial. *Van Kirk*, ¶ 41. In *Van Kirk* we explained that we must determine if the evidence is "cumulative" or "non-cumulative." If the tainted evidence is the *only* evidence presented to establish a certain fact, in other words it is *non*-cumulative, we then look to see if the evidence was presented to prove an element of the charged crime. If the only evidence tending to prove an element of the crime is tainted, inadmissible evidence, then reversal is compelled. *Van Kirk*, ¶ 45. If, however, the non-cumulative evidence was not presented as proof of an element of the charged crime, the State has the opportunity and the burden to demonstrate that there was no possibility that the tainted evidence might have contributed to the defendant's conviction. *Van Kirk*, ¶ 47.

¶32 On the other hand, if the tainted evidence is cumulative, meaning other evidence to prove the same fact was presented, then the State must show that admissible evidence

13

that proved the same facts as the tainted evidence was presented to the fact-finder **and** that the quality of the tainted evidence when compared to the properly-admitted evidence would not have contributed to the conviction. *Van Kirk*, ¶ 47.

¶33 In the case before us, the State argues that the HGN test result was cumulative evidence tending to show that Michaud was intoxicated as charged. It presented the following evidence of proof of Michaud's intoxication: (1) the failing results of Michaud's two field sobriety tests—the walk and turn and the one-legged stand; (2) Michaud's refusal to take the breathalyzer test; (3) the odor of alcohol coming from inside Michaud's car when the officer was speaking to Michaud; (4) a beer can inside the cab of Michaud's truck; and (5) Michaud's admission that he had drunk a couple of beers earlier that day.

¶34 Under these circumstances, we must determine whether the State met its burden in demonstrating that the quality of the HGN evidence was such that it did not contribute to the jury's conviction of Michaud. We conclude the State failed to meet this burden because it failed to present an argument. Rather, it made the following conclusory statement:

> Regardless of the HGN test, and as noted above, the record demonstrates Michaud also failed two other field sobriety tests. Thus, the jury could have easily concluded that failure of either the one-legged stand or the walk and turn field sobriety tests demonstrated Michaud was under the influence of alcohol while driving that day. The results of the HGN test was [sic] not necessary for the jury to conclude the State had met its burden of proof that Michaud was driving while under the influence of alcohol when Deputy Johnson stopped him on August 22, 2005.

¶35 This statement does not constitute a demonstration that "there was no reasonable

14

possibility that the tainted evidence might have contributed to the defendant's conviction." *Van Kirk*, ¶ 46. As we have noted in the past, evidence that is scientific in nature, such as the HGN, is likely to be accorded more weight by a jury than more subjective evidence, such as officer testimony or less scientific field sobriety tests. *State v. Crawford*, 2003 MT 118, 315 Mont. 480, 68 P.3d 848; *State v. Snell*, 2004 MT 334, ¶ 43, 324 Mont. 173, ¶ 43, 103 P.3d 503, ¶ 43.

¶36　Having determined that the District Court abused its discretion in admitting the HGN evidence and that the State failed to meet its burden of proving that this admission was harmless, we reverse the jury verdict in favor of the State and remand this matter to the District Court for retrial.

¶37　*Does the inference contained in § 61-8-404(2), MCA, whereby a jury may infer that a defendant was driving under the influence of alcohol from his refusal to take a sobriety test, violate a defendant's due process rights?*

¶38　Although we are reversing Michaud's conviction, we deem it appropriate to address the remaining issues Michaud raises, as they are bound to be presented again upon retrial.

¶39　Michaud challenges the constitutionality of the inference contained in § 61-8-404(2), MCA, on the following grounds:

(1)  the inference denies a defendant due process because it shifts the burden of proof from the State to the defendant;
(2)  the inference denies a defendant due process because it is not rationally related to a defendant's refusal to take a breath test;
(3)  the inference denies the accused the right to counsel at a critical stage of the proceedings; and
(4)  the inference compels a defendant to give evidence against himself.

Based on these claims of perceived unconstitutionality, Michaud argues that the District

Court's instruction to the jury as to this inference constitutes an error warranting reversal of his conviction. Michaud's constitutional arguments appear to be based upon a belief that a defendant could be convicted of driving under the influence of alcohol based solely upon evidence of the defendant's refusal to take a breath test. We address this misconception in our analysis.

¶40 The statute Michaud is challenging, § 61-8-404(2), MCA, provides in pertinent part:

> 61-8-404. Evidence admissible - conditions of admissibility. (1) Upon the trial of a criminal action or other proceeding arising out of acts alleged to have been committed by a person in violation of 61-8-401, 61-8-406, 61-8-410, or 61-8-805:
> (a) evidence of any measured amount or detected presence of alcohol, drugs, or a combination of alcohol and drugs in the person at the time of a test, as shown by an analysis of the person's blood or breath, is admissible. A positive test result does not, in itself, prove that the person was under the influence of a drug or drugs at the time the person was in control of a motor vehicle. A person may not be convicted of a violation of 61-8-401 based upon the presence of a drug or drugs in the person unless some other competent evidence exists that tends to establish that the person was under the influence of a drug or drugs while driving or in actual physical control of a motor vehicle within this state.
> . . . .
>
> (2) If the person under arrest refused to submit to one or more tests as provided in this section, proof of refusal is admissible in any criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a vehicle upon the ways of this state open to the public, while under the influence of alcohol, drugs, or a combination of alcohol and drugs. *The trier of fact may infer from the refusal that the person was under the influence. The inference is rebuttable.* (Emphasis added.)

¶41 The jury instruction to which Michaud objected provided:

> If the person under arrest for driving under the influence of alcohol refused to submit to one or more tests for alcohol concentration, proof of refusal is

16

admissible in any criminal action or proceedings arising out of acts alleged to have been committed while under the influence of alcohol. *The trier of fact may infer from the refusal that the person was under the influence. The inference is rebuttable.* (Emphasis added.)

¶42 Michaud contends that the inference contained in § 61-8-404(2), MCA, deprives a defendant of his due process rights because (1) it relieves the State of its burden to prove a critical element of the offense, i.e., that a person was actually driving under the influence, and shifts the burden to a defendant to prove that he was not driving under the influence, and (2) the inferred conclusion that a defendant was driving under the influence of alcohol does not rationally follow from the fact that he refused to take a breath test.

¶43 The State counters that this issue was resolved in *Morris*, wherein we held that § 61-8-404, MCA, did not impermissibly shift the burden of proof and did not violate Morris' due process rights.

¶44 In *Morris*, we explained that when construing a challenged statute, we "will read and interpret the statute as a whole, without isolating specific terms from the context in which they are used by the Legislature." We also noted that "all statutes carry with them a presumption of constitutionality, and we construe statutes narrowly to avoid an unconstitutional interpretation if feasible." *Morris*, ¶ 19 (citation omitted). We explained that when interpreting statutes, we "give effect to the legislative will, while avoiding an absurd result." *Morris*, ¶ 19. Analyzing § 61-8-404, MCA, as a whole, "we conclude[d] that subsection (2) must be read as requiring the production of other competent corroborating evidence of a DUI," given that subsection (1)(a) requires corroborating

evidence when a person actually takes a drug test. *Morris*, ¶ 21. We observed that an officer must have "probable cause" to arrest a driver suspected of driving while under the influence of alcohol and the evidence to support this probable cause, such as erratic driving, slurred speech, or an odor of alcohol. *Morris*, ¶ 21. Such evidence safeguards against the possibility that a defendant could be convicted of driving under the influence of alcohol based solely upon the defendant's refusal to take the test.

¶45 As did Michaud, Morris also objected to the district court's jury instruction on the statutory inference. Reviewing the jury instructions, we concluded that based on "the instructions as a whole" the burden of proof did not unconstitutionally shift to Morris. *Morris*, ¶ 18. We noted that the court directed the jurors to view the instructions as a whole and instructed jurors that Morris was "not required to prove his innocence or present any evidence." Moreover, the instructions charged the jury as to the elements of the offense, the State's burden of proof, and the presumption of innocence, among other things. *Morris*, ¶ 18. As in the case before us, the *Morris* district court also told the jury that the trier of fact *may* infer from the refusal that the person was under the influence but that this inference is rebuttable. *Morris*, ¶ 15. Under this analysis, we concluded that the district court in *Morris* did not err in instructing the jury on the provisions of § 61-8-404(2), MCA.

¶46 Michaud presents the same argument, under the same basic facts, asserting that *Morris* was wrongly decided. We decline to revisit *Morris*. The analysis in *Morris* is wholly applicable to the case at bar. The District Court issued the same instructions to Michaud's jury as the court issued in *Morris*. Therefore, based on *Morris*, Michaud's

18

claims that the statute unconstitutionally shifts the burden to the defendant and the court's jury instruction was erroneous, fail.

¶47 Michaud also argues that the statute is unconstitutional because the inferred conclusion that a defendant was driving under the influence of alcohol does not rationally follow from the fact that he refused to take a breath test. Again, Michaud asserts that the jury instruction on the inference requires reversing his conviction. Michaud notes that only "permissive presumptions"[2] are allowed in criminal cases, and opines that under various federal cases, the inference contained in § 61-8-404, MCA, is not an inference allowed in criminal trials. He maintains that "there is nothing within the fact of the refusal of a breath test which leads to a rational connection to actually being under the influence of alcohol," and that a person may refuse to take a breath test for several reasons, not merely out of fear of failing. Relying on *Leary v. United States*, 395 U.S. 6, 89 S. Ct. 1532 (1969), Michaud argues that the "test" for rationality of an inference is whether "it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." *Leary*, 395 U.S. at 36, 89 S. Ct. at 1548.

¶48 While we have not been asked previously to determine whether the inference in § 61-8-404(2), MCA, is a permissive inference or whether it satisfies the "rational connection" test stated in *Leary*, we have nonetheless applied the *Leary* test in *State, etc. v. District Court, etc.*, 180 Mont. 548, 558-59, 591 P.2d 656, 662 (1979) and *State v.*

---

[2] A "permissive" inference or presumption is one "that a trier of fact is free to accept or reject from a given set of facts." Black's Law Dictionary 1204, Bryan A. Garner ed., 7th ed., West 1999.

*Leverett*, 245 Mont. 124, 129, 799 P.2d 119, 122 (1990), in our consideration of other statutory inferences.

¶49   We conclude the statutory inference before us is a permissive inference. In *Leverett*, we noted that the inferences presented to the jury in the jury instructions were mandatory inferences in that they required that "it *shall be* presumed," and "the trier of fact *must* find."   It is apparent that the inference language in § 61-8-404(2), MCA, allows the trier of fact—whether a judge or a jury—to accept or reject the inference. Additionally, it expressly allows the defendant to rebut the inference.   Moreover, as discussed above in ¶ 44, the trier of fact must be is presented with "other competent evidence" that a defendant is driving while under the influence of alcohol.   Section 61-8-404, MCA; *Morris*, ¶ 21.

¶50   Applying the *Leary* test to this inference, we conclude that as a permissive inference, it does not violate due process in that there is a rational connection between driving while intoxicated and refusing to take a sobriety test.   Michaud had the opportunity to present evidence or argument to rebut the presumption but did not do so.

¶51   *Does the inference contained in § 61-8-404(2), MCA, deny a defendant his right to counsel at a critical stage of the prosecution or violate a defendant's right not to be compelled to give testimony against himself?*

¶52   Building upon the above-noted arguments, Michaud insists that a defendant can be convicted of driving under the influence based solely upon his refusal to take the sobriety test and as such, is deprived of the right to counsel at the critical time he must make this decision.   He also posits that this "inference of guilt" constitutes testimony against

20

oneself in violation of federal and state constitutional protections. Michaud's arguments fail for several reasons.

¶53 First, driving in Montana is a privilege, not a right. Throughout our statutes and relevant cases, we regularly encounter the phrase "driving privileges" or "driving while the privilege to do so was suspended." E.g., *State v. Turbiville*, 2003 MT 340, ¶ 21, 318 Mont. 451, ¶ 21, 81 P.3d 475, ¶ 21; § 61-2-302(9)(b)(ii), MCA; § 61-5-105(2), MCA. Additionally, § 61-8-402(1), MCA, expressly states that a person who operates a vehicle on Montana's public roadways is "considered to have given consent to a test or tests of the person's blood or breath for the purpose of determining any measured amount or detected presence of alcohol . . . ." If a person wishes to enjoy the benefits of this privilege, he must accept the concomitant responsibilities.

¶54 Second, as indicated above, competent and credible evidence was presented upon which the jury could find that Michaud was intoxicated; thus, the inference was not the sole issue before the jury.

¶55 Moreover, it is established in Montana that prior to taking a breath test, a defendant has no right to counsel. *State v. Armfield*, 214 Mont. 229, 234, 693 P.2d 1226, 1229 (1984), *overruled in part on other grounds*, *State v. Reavley*, 2003 MT 298, 318 Mont. 150, 79 P.3d 270. A breath test does not constitute a "critical stage event"; therefore, no right to counsel exists. *Armfield*, 214 Mont. at 234, 693 P.2d at 1230, citing *United States v. Wade*, 388 U.S. 218, 87 S. Ct. 1926 (1967); *Meyer v. State*, 229 Mont. 199, 202, 745 P.2d 694, 696 (1987).

21

¶56 Finally, we have previously addressed the constitutional concern of self-incrimination based upon admission of a defendant's refusal to submit to testing in *City of Missoula v. Forest*, 236 Mont. 129, 769 P.2d 699 (1989), wherein we stated:

> This Court has long adhered to the rule that neither the results of the breathalizer test nor a defendant's refusal to submit to the breathalizer test are communications protected by the Fifth Amendment. *State v. Jackson* (1983), 206 Mont. 338, 672 P.2d 255, citing *South Dakota v. Neville* (1983), 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748; *State v. Armfield* (1984), 214 Mont. 229, 693 P.2d 1226. Therefore, our discussion of the principle will remain brief.

> As a part of the program to deter drinkers from driving, Montana has enacted an Implied Consent Law. The statute declares that any person who operates a motor vehicle within the State shall be deemed to have given his consent to a chemical test to determine the alcohol content of his blood if arrested by a police officer for driving under the influence of alcohol. Section 61-8-402(1), MCA. The test is not compelled, yet refusal results in attendant penalties, including an immediate seizure of one's driver's license, § 61-8-402(3), MCA, and the admissibility of the refusal upon trial for DUI. Section 61-8-404(2), MCA. . . .

> . . . The Fifth Amendment affords no protection against the prosecutor's use of fingerprints, measurements, handwriting, voice identification or blood tests; all constitute "physical or real" evidence. *Schmerber v. California* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. Similarly, appellant's claim of constitutional prohibition against self-incrimination by the admission of his refusal to submit to the blood-alcohol test is foreclosed by the *Neville* decision, which defined the refusal as non-testimonial conduct.

*Missoula*, 236 Mont. at 133-34, 769 P.2d at 701-02.

¶57 While the cases discussed above pre-date the 2003 version of the statute in which the Legislature added the challenged inference, because evidence of the inference alone is insufficient to result in a conviction these cases remain relevant and applicable to the case before us.

22

¶58 We conclude the inference contained in § 61-8-404(2), MCA, did not violate Michaud's constitutional rights to due process, right to counsel or protection from self-incrimination. Furthermore, the District Court did not abuse its discretion in instructing the jury regarding this statute and its inference.

## CONCLUSION

¶59 For the foregoing reasons, we reverse and remand this matter to the District Court for proceedings consistent with this Opinion.

/S/ PATRICIA COTTER

We Concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ BRIAN MORRIS

Justice James C. Nelson concurs and dissents.

¶60 I concur as to Issue 2. I join Chief Justice Gray's Dissent as to issues 3 and 4, and I dissent from the Court's decision as to Issue 1, and would remand for a new trial as to that issue also.

¶61 Section 46-16-114(2), MCA, provides:

23

> The prosecutor and the defendant or the defendant's attorney shall conduct the examination of prospective jurors. The judge may conduct an additional examination. The judge may limit the examination by the defendant, the defendant's attorney, or the prosecutor if the examination is improper.

¶62 We are required to declare what is in terms or in substance contained in the statutes of this State, neither adding what has been omitted nor omitting what has been inserted. Section 1-2-101, MCA. Here, the plain language of the statute provides that the court may limit the examination of prospective jurors "if the examination is improper." There is nothing in the statute that allows the court to set arbitrary time limits on counsel's voir dire examination—at least absent counsel asking improper questions. This right of voir dire belongs to the defendant and may not be arbitrarily fettered by the trial judge. More to the point, there is no evidence in this case that defendant's counsel asked any "improper" questions of the prospective jurors. If, because of intolerably crowded court dockets, the time has come in Montana to require that the trial judge conduct the voir dire (as in the federal courts) or to allow the court to arbitrarily impose time limits on counsel's voir dire, then the Legislature should enact that change, not the judiciary. I would apply § 46-16-114(2), MCA, as it is written and hold that the trial court erred in imposing arbitrary time limits on counsel's voir dire. I would reverse and remand for a new trial on that issue also.

¶63 I concur with Issue 2; I dissent from Issues 1, 3 and 4.

/S/ JAMES C. NELSON

24

Chief Justice Karla M. Gray, concurring in part and dissenting in part.

¶64   I concur in the Court's opinion on the second issue, which reverses the District Court's admission of the officer's HGN testimony. I join Justice Nelson's dissent on the first issue and would reverse the District Court's limitation of time for voir dire as well.

¶65   I also respectfully dissent from the Court's opinion on the issues of whether the rebuttable inference contained in § 61-8-404(2), MCA, violates Michaud's constitutional rights to due process and to not incriminate himself. I would reverse and remand on those issues and overrule the Court's contrary holding on the identical due process issue in *Morris*—a case in which I did not participate.

¶66   Driving under the influence of alcohol (DUI) is—as it should be—a strict liability offense in Montana. *See* § 61-8-401(7), MCA. Here, however, it is my view that the Legislature has gone too far in its zeal to convict persons suspected of DUI. Agreeing wholeheartedly with the Court that statutes are presumed constitutional and a challenger bears a heavy burden, I would hold that the rebuttable statutory inference a jury may draw—that a person who refused a blood or breath test for alcohol concentration was in fact under the influence of alcohol—together with the language that the inference is rebuttable, cannot withstand constitutional scrutiny.

¶67   The elements of the strict liability DUI offense are straightforward. It is unlawful for a person under the influence of alcohol to drive or be in physical control of a vehicle on the ways of this state open to the public. Section 61-8-401(1)(a), MCA. "Under the influence" means that, as a result of taking alcohol into the body, a person's ability to

25

safely operate a vehicle has been diminished. Section 61-8-401(3)(a), MCA. It cannot be disputed that the State carries the burden of proving each element beyond a reasonable doubt.

¶68 Frequent readers of this Court's opinions—whether trial judges, legal practitioners or lay Montanans—know that questions about whether the accused was driving or in physical control of a vehicle, or whether the vehicle was traveling on the ways of this state open to the public, generally are not the focal point of DUI cases. The element of the offense most often at issue is whether the State proved beyond a reasonable doubt that the accused was "under the influence" of alcohol. It is my opinion that the statutory inference and the statutory "rebuttable" language shift the burden away from the prosecution, thereby violating Michaud's due process rights.

¶69 This Court first addressed the statutory inference at issue here in *Morris*. It properly relied on *State v. Leverett*, 245 Mont. 124, 127, 799 P.2d 119, 120-21 (1990), for the proposition that—in construing evidentiary presumptions (and implicitly, inferences) in a criminal case—the reviewing court must focus on the particular language used to charge the jury and determine how a reasonable juror would understand it. *Morris*, ¶ 17. Having done so, the Court noted the usual "presumption of innocence," "beyond a reasonable doubt" and defendant "not required to . . . present evidence" instructions were given, and concluded the instruction containing the § 61-8-404(2), MCA, rebuttable inference did not impermissibly shift the burden. *Morris*, ¶ 18. It is my view that the Court erred there and repeats the same error here.

26

¶70 Neither in *Morris* nor the present case was the jury—a group of lay people—instructed as to the meaning of an inference or how it could possibly harmonize the various instructions. Of course, it is easy to simply assume that jurors hear and understand every word in instructions, thus leaving them consciously aware that they may—but need not—use Michaud's refusal to take the breath test to establish that he was "under the influence" absent rebuttal evidence from Michaud. Even if one were willing to make such an assumption, however, it is my view that no "presumption of innocence," "State's burden" and "defendant need not produce evidence" instructions could ever remove the taint of the instructional and statutory language "[t]he inference is rebuttable." At the very least, the latter language creates a stark and clear inconsistency between and among the instructions. I would hold that the statutory rebuttable inference impermissibly shifts the burden to the defendant and, therefore, violated Michaud's constitutional right to due process. Instead, the Court simply relies on *Morris,* mentioning several times that the "inference is rebuttable" but without ever explaining why it is permissible to require a defendant in a criminal case to produce evidence. I cannot agree.

¶71 The Court then moves on to the portion of *Morris* discussing our obligation to interpret § 61-8-404(2), MCA, to avoid unconstitutionality if feasible. The *Morris* Court listed a handful of different rules of statutory construction, including "construe statutes narrowly," "give effect to the legislative will" and others. *See Morris*, ¶ 19. One of the most basic rules of statutory construction is missing from the list, however, and it is the rule that it is our job "not to insert" language not contained in a statute. The *Morris*

27

Court simply imported into subsection (2) of § 61-8-404, MCA, the language the Legislature included in subsection (1)(a)—requiring corroborating evidence of "under the influence"—when a person takes, rather than refuses, the test. Since it is clear that the Legislature knew how to include such language when it intended to do so, I cannot see how rewriting the statute in that manner ascertains the Legislature's will or does anything other than insert language the enacting branch of government did not.

¶72 Moreover, it is one thing to say that this Court has imported the "corroborating evidence" portion of § 61-8-404(1)(a), MCA, into § 61-8-404(2), MCA. It is quite another thing for the jury to know of that critical requirement. Here, the jury, having not been instructed as to what an inference is, also was not instructed of the critical requirement that corroborating evidence was required before the State could meet its burden of proving the elements of the DUI offense beyond a reasonable doubt.

¶73 In the present case, the evidence of "under the influence" is sketchy at best and may not have been accepted by the jury as sufficient to corroborate anything more than that Michaud's vehicle was missing a mirror, its license plate was obstructed from some perspectives, and Michaud admitted he had consumed a few drinks earlier in the day and, in the officer's view, had "difficulty" with his balance. The question is not whether there was corroborating evidence that Michaud had a drink. The question is whether there was corroborating evidence that he was driving a vehicle "under the influence" of alcohol; that is, whether Michaud's ability to safely drive a vehicle had been diminished by taking alcohol into his body. *See* § 61-8-401(3)(a), MCA. Finally, even if the Court's statutory construction in *Morris* and here were correct, the taint of instructing the jury that

28

Michaud could rebut the refusal, and thereby try to keep it from inferring from the refusal itself that he was under the influence, remains.

¶74    I also must note that in both *Morris* and here, the Court follows the State's lead in falling back on the "red herring" of the absence of a challenge to the probable cause needed for an arrest. I daresay that most television viewers in this country understand that probable cause to arrest is a much lesser standard than proving each element of a charged offense beyond a reasonable doubt. That proposition needs no citation to authority. I am concerned and mystified about the Court's insertion of that concept here—when, indeed, it is not raised. Stating, as the Court does in ¶ 44, that evidence sufficient to support probable cause "safeguards against the possibility that a defendant could be convicted of driving under the influence of alcohol based solely upon the defendant's refusal to take the test" turns the administration of criminal justice on its head. It also is contrary to other fundamental constitutional principles such as the presumption of innocence and the State's burden to prove every element of a charged offense beyond a reasonable doubt.

¶75    I observe, in relation to this issue, that the Court does not address at all Michaud's argument that the inference the jury can draw from a refusal to take the test does not meet statutory requirements for an inference. Section 26-1-502, MCA, requires that an inference be founded on a fact legally proved and "on such a deduction from that fact as is warranted by a consideration of the usual propensities or passions of men . . . ." In this case, the predicate fact legally proved is that Michaud refused to take the test. Clearly, that refusal could have been based on a concern that results of the test would show an

29

elevated blood alcohol concentration. In my view, however, the refusal could have been based on a simple lack of willingness to cooperate with law enforcement, a belief that such a test would be an invasion of privacy or other reasons. Thus, in my view, the deduction of "under the influence" from a refusal to take the test is not—under § 26-1-502, MCA—warranted.

¶76 On the second issue, I would hold that the inference does not meet the statutory requirements for an inference and, much more importantly, that the rebuttable inference contained in § 61-8-404(2), MCA, and included in the jury instructions, violated Michaud's due process rights by shifting the burden to him to come forward and rebut evidence regarding an essential element of the DUI offense the State was required to prove beyond a reasonable doubt.

¶77 I also dissent from the Court's analysis and holding that the statutory inference does not violate Michaud's right not to be compelled to give testimony against himself. The Court begins its analysis, at ¶ 53, with the long-established and undisputed principles that driving in Montana is a privilege and not a right and that, pursuant to § 61-8-402(1), MCA, each person who drives a vehicle in Montana has impliedly consented to a blood or breath test for determining the presence of alcohol in the person's body. It is critical to note, however, that § 61-8-402, MCA, is the statute providing for the seizure and suspension of a driver's license. Thus, because driving is a privilege, and implied consent to the test has been given in exchange for the exercise of that privilege, a refusal of the test logically and constitutionally results in the loss of the license.

30

¶78     That logic and rationale, however, is a far different matter from the statute defining the criminal offense of DUI, the constitutional requirement that the State prove each element beyond a reasonable doubt, and the constitutional right not to be compelled to testify against oneself.  If Michaud is presumed innocent, need not put on a defense and can hold the State to its proof without being required to incriminate himself, how can a simple "No" in response to a request for the test—or mere silence, taken as a refusal—be substantively different from refusing to talk to law enforcement in other criminal case contexts?  Stated differently, if the State cannot comment on a defendant's silence—and our cases on that point are legion—how can the State be allowed to use a defendant's "No," or silence, to prove an essential element of the case, especially when a jury is simultaneously told that the defendant can undo or at least try to undo such use merely by putting on evidence, something he cannot constitutionally be required to do?  I submit that, constitutionally, this cannot be permitted.

¶79     In this regard, the Court relies on *Forest* and *Armfield* as holding that the right against self-incrimination is not violated when a DUI defendant's refusal to submit to testing is admitted as evidence.  I question whether these somewhat dated cases were correctly decided.  Leaving those questions aside, however, it is my view that admitting evidence that a defendant refused the test does not begin to rise to the constitutional magnitude of admitting the evidence as an inference of the essential "under the influence" element and telling the jury the defendant can rebut the inference.  While the bare introduction of the refusal may not be testimonial, pursuant to *Forest* and *Armfield,*

31

I believe use of the denial as substantive evidence that the defendant was under the influence of alcohol changes the nature of the evidence entirely.

¶80     For all the stated reasons, I would reverse the District Court and remand for further proceedings.  I dissent from the Court's failure to do so.

/S/ KARLA M. GRAY

Justice James C. Nelson joins in the foregoing concurring and dissenting opinion of Chief Justice Karla M. Gray.

/S/ JAMES C. NELSON