DA 11-0705

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 277N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DWAIN EDWARD WEAVER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Seventeenth Judicial District,
In and For the County of Valley, Cause No. DC-2010-27
Honorable John C. McKeon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Mary L. Zemyan, Attorney at Law, Wolf Point, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General, Helena, Montana

          Nickolas C. Murnion, Valley County Attorney, Glasgow, Montana

Submitted on Briefs:  October 30, 2012

Decided:  December 4, 2012

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Weaver appeals his conviction on seven drug-related charges following a jury trial in the Seventeenth Judicial District Court, Valley County. Weaver rented a building in Valley County known as the Missouri River Outpost (The Outpost) for the purpose of opening a medical marijuana dispensary. Weaver was still in the process of renovating The Outpost when he was approached by Roosevelt County Undersheriff Ron Kemp on August 6, 2010. Undersheriff Kemp did not identify himself as a law enforcement officer and was dressed in plain clothes when he entered The Outpost and asked Weaver about his plans. According to Undersheriff Kemp, Weaver stated that he would sell marijuana or hashish to anyone with a registry identification card, and was also planning on selling to hunters and tourists who came to Montana with medical marijuana cards from other states. Believing that Weaver was violating the provisions of the Medical Marijuana Act (MMA),[1] Undersheriff Kemp enlisted the assistance of the Montana Department of Justice Division of Criminal Investigation (DCI).

---

[1] All references in this Opinion to the "Medical Marijuana Act" are to the 2009 version of the Act, §§ 50-46-101 to 210 (2009).

2

¶3 Undersheriff Kemp returned to The Outpost on August 9, 2010, accompanied by DCI Agent Kevin Klostermeier. Agent Klostermeier had obtained a medical marijuana registry identification card and driver's license under the fictitious name of Jake Elmore. Agent Klostermeier told Weaver he was working in the area and was not able to make contact with his provider. Weaver asked Agent Klostermeier to fill out a "206 Transfer Form." After Agent Klostermeier completed the form, Weaver sold him fourteen grams of hashish. Based on the observations of Undersheriff Kemp and Agent Klostermeier, officers obtained a search warrant and conducted a search of The Outpost on August 11, 2010. Officers seized twenty-nine marijuana plants, harvested marijuana, hashish, grow lights, guns, paraphernalia, twelve receipts from previous sales, and customer files. At the time of the investigation and seizure, Weaver was a registered patient but not an authorized caregiver. Weaver had applied to become an authorized caregiver under the MMA, but his application had not yet been approved by the Montana Department of Public Health & Human Services (DPHHS).

¶4 Weaver was arrested and charged with seven felonies: five counts of criminal distribution of dangerous drugs, one count of criminal possession of dangerous drugs, and one count of criminal production or manufacture of dangerous drugs. A jury trial was held April 5-8, 2011. The jury found Weaver guilty on all seven counts.

¶5 Weaver appeals his conviction in District Court and raises the following issues:

¶6 1. Did the District Court err when it denied Weaver's pretrial motion to dismiss?

¶7 2. Did the District Court err when it denied Weaver's motion to suppress evidence based on entrapment?

3

¶8    3. Were Weaver's patient-to-patient transfers of marijuana and possession of twenty-nine marijuana plants protected by the affirmative defense provided by the MMA?

¶9    4. Did the District Court fail to fully and fairly instruct the jury on the affirmative defense provided by the MMA?

¶10    Weaver argued in a pretrial motion to dismiss that Counts I-VI should be dismissed because the Information alleged that he possessed and distributed hashish, and hashish is not specifically listed as a "dangerous drug" in the schedule of controlled substances. Weaver relied on *State v. Kelman*, 199 Mont. 481, 483-84, 649 P.2d 1292, 1293-94 (1982), in which this Court held that the facts set forth in an Information charging a defendant with possession of hashish were insufficient to state a crime under Montana law because hashish was not defined or listed in the schedules of controlled substances at that time. The District Court denied Weaver's motion to dismiss after concluding that the Information provided sufficient notice of the charged offenses. We agree with the District Court's decision. In response to the *Kelman* decision, the Legislature passed legislation in 1983 that added the following definition:

> "Hashish", as distinguished from marijuana, means the mechanically processed or extracted plant material that contains tetrahydrocannabinol (THC) and is composed of resin from the cannabis plant.

Section 50-32-101(14), MCA. The statute listing dangerous drugs under Schedule 1 includes "tetrahydrocannabinols, including synthetic equivalents of the substances contained in the plant or in the resinous extractives of cannabis." Section 50-32-222(4)(bb), MCA. Each of the counts in the Information specifically alleged that

4

Weaver either sold or possessed a dangerous drug as defined in § 50-32-101, MCA. The District Court correctly concluded that the facts as alleged in the Information were sufficient to state a crime under Montana law. Weaver's motion to dismiss was properly denied.

¶11 Next, Weaver argues that the District Court erred in concluding that he had not established entrapment as a matter of law. We agree with the District Court that the mere use of an undercover agent with fake identification does not constitute entrapment. Weaver failed to meet his burden in proving that he was lured or induced into committing a crime he had no intention of committing. *State v. Smith*, 2006 MT 145, ¶ 12, 332 Mont. 386, 138 P.3d 799. Here, the evidence supports the conclusion that entrapment did not occur because Agent Klostermeier merely afforded Weaver the opportunity to commit an offense in furtherance of a criminal purpose that originated with Weaver. Section 45-2-213, MCA.

¶12 The next issue Weaver raises concerns whether his patient-to-patient transfers of marijuana and possession of twenty-nine marijuana plants were protected by the affirmative defense provided by the MMA. First, we note that Weaver's sales and possession of hashish are not protected by the MMA. *See State v. Pirello*, 2012 MT 155, ¶ 18, 365 Mont. 399, 282 P.3d 662. Second, the so-called "206 Transfer Form" was created by the medical marijuana industry and is inconsistent with the requirements of the MMA, which does not allow cardholders to obtain marijuana from anyone other than their registered caregiver. *See State v. Johnson*, 2012 MT 101, ¶ 21, 365 Mont. 56, 277 P.3d 1232. The 206 Transfer Form is not recognized by the DPHHS. Third, Weaver was

5

not a registered caregiver, so as a patient he was allowed to possess only six marijuana plants and one ounce of marijuana. Section 50-46-201(2), MCA. Given these facts, Weaver did not present sufficient evidence to support his affirmative defense. The jury's rejection of this affirmative defense was fully supported by the evidence in the record.

¶13 Weaver's final argument is that the District Court abused its discretion in refusing to offer two of his proposed jury instructions. Weaver's Proposed Instruction No. 25 was intended to instruct the jury on the affirmative defense provided by § 50-46-206, MCA. The State proposed a similar instruction that contained different introductory language but recited the same elements. The District Court modified the introductory language proposed by both parties, but recited the elements of the defense in much the same way as the parties had proposed. Weaver also challenges the District Court's refusal to give Weaver's Proposed Instruction No. 6, which provided definitions of "dangerous drug," "marijuana," and "hashish." These terms were accurately defined in other instructions provided by the District Court. We review jury instructions in a criminal case to determine whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *State v. Michaud*, 2008 MT 88, ¶ 16, 342 Mont. 244, 180 P.3d 636. A district court has broad discretion when it instructs a jury. *Michaud*, ¶ 16. A review of the jury instructions demonstrates that the District Court fully and fairly instructed the jury on the law applicable to this case, and did not abuse its discretion when it refused to accept Weaver's proposed instructions word for word.

¶14 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions.

6

Having reviewed the briefs and the record on appeal, we conclude that Weaver has not met his burden of showing that the District Court abused its discretion or erred in any way. We therefore affirm the District Court.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JIM RICE