DA 13-0499

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 280

RONDA TAURMAN KENSER,

      Plaintiff and Appellant,

  v.

PREMIUM NAIL CONCEPTS, INC.,

      Defendant, Appellee and Cross-Appellant.

APPEAL FROM:     District Court of the Tenth Judicial District,
                    In and For the County of Fergus, Cause No. DV 2010-61
                    Honorable Greg Pinski, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Jory C. Ruggiero, Domenic A. Cossi, Western Justice Associates PLLC, Bozeman, Montana

      For Appellee:

            J. Robert Planalp, Patrick C. Riley, Landoe, Brown, Planalp & Reida, P.C., Bozeman, Montana

                           Submitted on Briefs:  September 3, 2014
                                    Decided:  October 21, 2104

Filed:

                          Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Ronda Kenser operated a nail salon in Lewistown, Montana, from 1998 to 2009. In 1999, Kenser began using a liquid acrylic nail product that was repackaged and distributed by Premium Nail Concepts, Inc. (PNC). In 2008, Kenser developed painful boils on her face, rashes on her skin, and respiratory difficulty. Kenser filed a workers' compensation claim in early 2009. The designated workers' compensation doctor, Dr. John Schumpert, diagnosed Kenser's condition as a sensitization to ethyl methacrylate (EMA), a chemical ingredient contained in the PNC nail product Kenser consistently used.

¶2 In May 2010, Kenser filed a products liability claim against PNC in the Tenth Judicial District Court, Fergus County. The court conducted a five-day jury trial in June 2013. The jury returned a verdict in favor of PNC. Both before and during the trial, the District Court made multiple discretionary rulings, several of which Kenser now appeals. PNC cross-appeals the court's denial of its motion for a directed verdict as to Kenser's request for punitive damages. We reverse and remand for retrial on Kenser's appeal and therefore do not reach PNC's cross-appeal.

### ISSUES

¶3 A restatement of the issue on appeal is whether the District Court abused its discretion and committed reversible error when it:

(1) allowed PNC to present expert testimony that its product was "safe as used" when skin contact is avoided;

(2) denied Kenser the right to cross-examine PNC's expert witnesses pertaining to their opinions that skin contact is common in the industry;

(3) instructed the jury on the meaning of "safe as used"; and

2

(4) refused to instruct the jury that skin contact is common in the nail industry.

¶4    The issue on cross-appeal is whether the District Court erred in denying PNC's Motion for Directed Verdict as to punitive damage liability.

## FACTUAL AND PROCEDURAL BACKGROUND

¶5    Ronda Kenser operated a nail salon for over a decade and regularly created acrylic nails for her clients.  At a 1999 trade show she learned about PNC's liquid acrylic nail product and chose to use it exclusively in her shop.  In creating an acrylic nail, a nail technician mixes the PNC powder with the PNC liquid, applies the mixture to a client's nail with a brush, allows it to dry, files the artificial nail to shape it, and then polishes the finished nail.  It is not at all uncommon for a nail technician to get the liquid ingredient on her hands or to get the dust from nail filings on her hands or arms.  Additionally, the technician is exposed to the fumes of the products and can inhale the dust created during the filing process.

¶6    In 2008, Kenser began developing painful boils on her face, rashes on her hands and arms, and difficulty breathing.  She saw several physicians, none of whom could diagnose her condition definitively, though several believed it was caused by environmental exposure at her workplace.  Kenser tried wearing a mask and gloves and reducing the number of clients she serviced but the symptoms remained debilitating.  She also began experiencing symptoms in restaurants, grocery stores, and other public places away from her nail salon.

¶7    In 2009, concluding her condition was caused by something in the salon, Kenser filed a workers' compensation claim.  She was sent to Dr. Schumpert for an independent medical evaluation.  Schumpert recognized the symptoms immediately and diagnosed Kenser with an

3

allergic reaction to ethyl methacrylate, an ingredient in PNC's liquid nail product. He told her she could not continue working as a nail technician and that she should not return to the salon—not even to close her business.

¶8 In 2010, Kenser filed this products liability suit against PNC alleging that she developed contact dermatitis and asthma from exposure to EMA in PNC's acrylic nail product. She claimed that her condition is irreversible and that whenever she is exposed to any chemical in the acrylate family—of which there are many in our daily environments—she experiences a powerful, systemic, and potentially dangerous allergic reaction. She must carry an EPI pen with her at all times. She asserted that these reactions preclude her from working and enjoying or participating in many other non-working activities.

¶9 Kenser's claim at its simplest is that PNC's product is more dangerous than an ordinary user of the product would expect, and it is not safe as a nail product because skin contact with EMA, a known allergen, cannot be avoided and such contact was foreseeable by PNC. She therefore asserted, among other things, that PNC's product was defectively designed, defectively manufactured, and defectively labeled in that it failed to warn users of the dangers associated with the product. She sought compensatory and punitive damages.

¶10 PNC asserted numerous defenses, among them that Kenser misused the product by getting it on her hands and that she was aware of the risk of such misuse and assumed any risk of injury. Section 27-1-719(5), MCA. PNC maintained that it was not liable for any alleged injuries or damages. Later in the proceeding, PNC moved to have Kenser's claim for punitive damages dismissed for lack of evidence supporting the claim.

4

¶11 On April 1, 2013, Kenser moved for partial summary judgment on PNC's asserted affirmative defenses. She argued that PNC had produced no evidence that her use of the product was unreasonable or unforeseeable, and therefore under § 27-1-719(5), MCA, her use did not constitute misuse. She also claimed PNC could identify no evidence that she assumed the risk of use. On May 6, 2013, while awaiting the court's order on summary judgment, Kenser submitted a trial brief seeking exclusion of industry reports that PNC intended to introduce via expert testimony to the jury. These reports, authored by the Cosmetic Ingredient Review Board (CIR), focused on safety studies of EMA in nail products and concluded that EMA in nail products was "safe as used, when skin contact is avoided." Kenser countered that this evidence would impermissibly inject the concept of "misuse" to the jury and was inadmissible.

¶12 The District Court conducted a pre-trial motions hearing on May 14, 2013, in which it addressed multiple issues including PNC's defenses of misuse and assumption of the risk. It did not address Kenser's request that CIR's reports and related testimony be excluded.

¶13 On May 21, 2013, the court entered an order granting Kenser's motion for summary judgment vis-à-vis PNC's defenses of misuse and assumption of the risk. The court observed that the products' liability statute codified at § 27-1-719, MCA, provides two affirmative defenses to defendants—unreasonable misuse and assumption of the risk. However, it concluded that PNC failed to present admissible evidence that Kenser's alleged misuse of PNC's product—getting the product on her skin during application—was unforeseeable. Relying on *Hart-Albin Co. v. McLees, Inc.*, 264 Mont. 1, 870 P.2d 51 (1994), the court explained:

5

> If, as here, the manufacturer reasonably foresees that its product can be misused in a certain fashion – i.e., that the offending misuse is "reasonable" – then the manufacturer does not have the benefit of a defense which exonerates or mitigates its breach of duty and its wrongful conduct in failing to design out or warn against the defect.

The court noted that PNC had expressly acknowledged that it was foreseeable that its consumers would get the product on their skin.

¶14 Additionally, the court concluded that in order to establish that Kenser had assumed the risk of injury associated with her alleged "misuse" of the product, PNC was required to show that Kenser subjectively knew in advance that PNC's product would cause the injuries she suffered. *Lutz v. Nat'l. Crane Corp.*, 267 Mont. 368, 884 P.2d 455 (1994). The court ruled that Kenser had no such knowledge. Consequently, the District Court granted Kenser's motion and held that PNC would not be permitted to argue to the jury that Kenser had misused the product or assumed the risk of such alleged misuse. On appeal, PNC does not challenge the District Court's ruling in favor of Kenser as to these affirmative defenses.

¶15 At this same hearing, the District Court denied PNC's motion to dismiss Kenser's claim for punitive damages. However, it did not rule on Kenser's objection to admission of the CIR reports and related testimony.

¶16 The week before trial commenced, the parties submitted proposed jury instructions. Among other instructions, Kenser proposed that the court inform the jury that: (1) the manner in which she used PNC's nail product was reasonably foreseeable to PNC; (2) it did not constitute misuse; and (3) it was foreseeable to PNC that nail technicians would get the product on their skin and inhale the vapors.

6

¶17     Notwithstanding the court's order of summary judgment, PNC sought to establish as part of its general trial defense that its product was "safe as used." Kenser again argued that such a defense was in violation of the court's ruling on summary judgment and sought to exclude related demonstrative evidence and expert testimony.

¶18     Prior to the commencement of trial, Kenser moved to strike certain demonstrative exhibits containing CIR's conclusions that PNC intended to show to the jury during opening statements. Upon consideration, the District Court notified the parties that Kenser's motion to strike the CIR reports and related testimony was denied but that the court would issue a "cautionary jury instruction" to the jury on the issue. After the jury was seated, the court instructed the jury that it had already determined that the manner in which Kenser used PNC's product was reasonably foreseeable to PNC and that she did not misuse the product. However, the court declined to give the third prong of Kenser's proposed instruction to the effect that it was foreseeable to PNC that nail technicians would get the product on their skin and inhale the vapors. The court then explained to the jury that the phrase "'safe as used' refers to the incorporation of a specific ingredient into a product. It does not refer to how the consumer uses the product. This [c]ourt has previously determined that plaintiff did not misuse defendant's product."

¶19     During trial, PNC presented expert witness testimony and the CIR findings that EMA in nail products is "safe as used, when skin contact is avoided." Kenser, who had previously objected to the admission of such evidence, attempted to cross-examine PNC's witnesses to elicit testimony that the nail industry, including PNC, knew of the prevalence of skin contact among users. The District Court refused to allow this cross-examination. The court based

7

this determination on its previous ruling that Kenser's use of the product was foreseeable and she had not misused the product. The court therefore ruled that testimony relating to use was irrelevant.

¶20 At the conclusion of the trial, the jury determined that PNC's nail product was not in a defective condition because of a manufacturing defect, a design defect, or inadequate warning. It therefore ruled in favor of PNC and against Kenser.

¶21 Kenser filed a timely appeal.

## STANDARD OF REVIEW

¶22 Generally, we review a district court's evidentiary rulings and decisions regarding jury instructions for an abuse of discretion. A district court's discretion must be "guided by the rules and principles of law" and its jury instructions must "fully and fairly instruct the jury on the law applicable to the case." *Jacobsen v. Allstate Ins. Co.*, 2009 MT 248, ¶ 17, 351 Mont. 464, 215 P.3d 649; *Peterson v. St. Paul Fire & Marine Ins. Co.*, 2010 MT 187, ¶ 22, 357 Mont. 293, 239 P.3d 904. Additionally, and to the extent a discretionary ruling is based upon a conclusion of law, our review is de novo. In the case before us, the District Court's challenged expert witness and jury instruction rulings involved conclusions of law which we review de novo for correctness. *Jacobsen*, ¶ 17 (internal citations omitted).

## DISCUSSION

¶23 *Did the District Court abuse its discretion and commit reversible error when it: (1) allowed PNC to present expert testimony that its product was "safe as used" when skin contact is avoided; (2) denied Kenser the right to cross-examine the expert witnesses who proffered this evidence; (3) instructed the jury on the meaning of "safe as used"; and (4) refused to instruct the jury that skin contact is common in the nail industry?*

¶24     Kenser essentially argues that the confluence of the errors noted above resulted in an unfair trial, requiring reversal.  We agree with Kenser.  Because the errors are cumulative, we do not address the alleged errors serially but rather analyze the overall impact of the court's related rulings.

¶25     As argued to the District Court, Kenser asserts that when the District Court allowed PNC to argue that its product was "'safe as used' when skin contact was avoided," it erroneously allowed PNC to introduce the concept of misuse by skin contact.  She maintains that based upon the uncontroverted opinions of industry experts that it is common for nail technicians to get this product on their skin during use, the court correctly granted her summary judgment motion and ruled that she had not misused the product and that PNC could not rely on "misuse" as a defense.  She asserts that in light of the correct summary judgment ruling, the court erred in allowing PNC to introduce the CIR reports to the effect that the product was "safe as used," and compounded its error by denying her the right to cross-examine the PNC witnesses who had offered the CIR evidence.  Kenser argues that PNC's knowledge of the frequency with which skin contact occurred among technicians was relevant to her design defect and punitive damages claims, as well as necessary to rebut PNC's "safe as used, when skin contact is avoided" argument.

¶26     Kenser further argues that the District Court abused its discretion when it refused to instruct the jury on the third prong of her proposed jury instruction that it was foreseeable to PNC that nail technicians would get the product on their skin and inhale the vapors, and when it instructed the jury on the meaning of "safe as used."

9

¶27 This is a products liability case brought by Kenser to determine whether PNC's nail product is safe when used by a consumer as a nail product. Montana has enacted a strict liability scheme for product defect claims. Section 27-1-719(2), MCA, provides in relevant part:

> A person who sells a product in a defective condition unreasonably dangerous to a user or consumer . . . is liable for physical harm caused by the product to the ultimate user or consumer . . . if:
> (a) the seller is engaged in the business of selling the product; and
> (b) the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

It is undisputed that PNC sells the product and it reaches the consumer, including Kenser, in the same condition in which it was sold.

¶28 As noted above, § 27-1-719(5), MCA, allows a defendant to argue in its defense that a plaintiff misused its product or assumed the risk of misusing the product. In a Montana products liability case, the question of misuse may go to the jury only if the misuse was not reasonably foreseeable. *Lutz*, 267 Mont. at 376, 884 P.2d at 459. In other words, if it is reasonably foreseeable to a defendant that its product can be or is being used in a specific manner, and a consumer is injured by using the product in that manner, the defendant cannot argue that the plaintiff had misused its product. In the case before us, there is substantial evidence in the record that PNC was aware that consumers' use of its products resulted in skin contact. PNC further knew that the chemical EMA was a known allergen and had "sensitizing" potential when in contact with skin. Thus the court's grant of summary judgment to Kenser on the misuse defense was not erroneous, nor does PNC argue on cross-appeal that it was.

10

¶29 Having correctly ruled that misuse was not a question for the jury because Kenser's use was foreseeable, the District Court nonetheless allowed PNC to base its general defense at trial on expert opinions that PNC's product was "safe as used, when skin contact is avoided." The court reasoned that because it had defined "safe as used" for the jury, explaining that the phrase did not refer to how the consumer uses the product but rather referred to the incorporation of a specific ingredient into a product, the CIR reports and related testimony did not imply "misuse" by Kenser, and were therefore admissible.

¶30 PNC's argument that its product was "safe as used, when skin contact was avoided" was presented to the jury repeatedly through expert testimony and through "scientific" studies authored by an industry safety review board. Kenser argues that this circular testimony influenced the jury to conclude that users could avoid skin contact and those users who did not were "misusing" the product and therefore not entitled to relief. We agree with Kenser that the allowance of this evidence was confusing and seemingly violated the court's grant of summary judgment to Kenser on the issue of misuse.

¶31 The District Court compounded its error by then prohibiting Kenser from cross-examining PNC's expert witnesses on PNC's knowledge of industry-wide skin contact. Without the benefit of cross-examination, Kenser was unable to impeach the expert witnesses by establishing that skin contact was common, that PNC knew that its users got the product on their skin, and that skin contact caused sensitization in a specific percentage of users. She was also deprived of the opportunity to underscore her argument that such skin contact did not constitute misuse under Montana law.

¶32 It is well-established that evidence that is labeled "scientific" or "expert" may be accorded more weight by a jury than more subjective evidence. *State v. Michaud*, 2008 MT 88, ¶ 40, 342 Mont. 244, 180 P.3d 636. Hence, it is critical for a court to allow the weight of such evidence to be attacked by cross-examination or refutation. *Michaud*, ¶ 32. Thus, the District Court abused its discretion when it admitted the confusing CIR evidence and then refused to allow Kenser to pursue, through cross-examination, evidence that was relevant to her claims and relevant to the rebuttal of PNC's defense. *Malcolm v. Evenflo Co.*, 2009 MT 285, ¶¶ 99-101, 352 Mont. 325, 217 P.3d 514.

¶33 The court's refusal to instruct the jury that it was foreseeable to PNC that nail technicians would get the product on their skin and inhale the vapors was an abuse of its discretion as well. The court's instruction that Kenser's use of the product was foreseeable by PNC and did not constitute misuse was correct but inadequate and allowed the possibility that the jury could or would equate "skin contact" with "misuse." Had the jury been informed that PNC knew that skin contact occurred and did not consider this to be "misuse," the jury would have been "fully and fairly" informed. A court abuses its discretion when it fails to give a jury instruction that fully and fairly informs the jury of the applicable law. *Peterson*, ¶ 22.

¶34 Lastly, the court abused its discretion when it defined the term "safe as used" to the jury as "refer[ring] to the incorporation of a specific ingredient into a product. It does not refer to how the consumer uses the product." Neither the record nor the court's orders contain any supporting authority for this definition. The court held a pre-trial hearing, at which time counsel for the parties and the District Court discussed the definition of "safe as

12

used" to be given to the jury. Unfortunately, because the contemporaneous record of this hearing turned out to be inaudible, we have no transcript of the discussions to inform us of the source of the court's definition. As noted by Kenser however, there is no case law in Montana or other jurisdictions that defines "safe as used" in products liability cases in the manner utilized by the court. Furthermore, the court's definition of "safe as used" makes little sense in the context of a products liability claim in which the concepts of use and misuse apply to the *user or consumer*, and not to the manner in which the seller might incorporate a component into its allegedly defective product. By introducing "safe as used" into evidence and its instructions in the manner which the court did, the court erroneously injected a misuse defense back into the case after it had previously and correctly ruled that misuse was not a defense available to PNC.

¶35 In reviewing jury instructions, we consider the instructions as a whole to determine whether they fully inform the jury of the law of the case, and we will not overturn a trial court's decisions in instructing a jury unless the court has abused its discretion. *Edie v. Gray*, 2005 MT 224, ¶ 21, 328 Mont. 354, 121 P.3d 516. In the case before us, the "safe as used" jury instruction given by the court finds no support in products liability law, wrongly implies that skin contact constitutes "misuse" in violation of the court's order on summary judgment, is confusing, and does not fully and fairly instruct the jury. The giving of the instruction was thus an abuse of discretion. *Edie*, ¶ 21.

¶36 In sum, we conclude that the District Court abused its discretion in allowing PNC to present expert testimony that its product was "safe as used" when skin contact is avoided. This error could have been ameliorated had the court allowed Kenser to cross-examine the

expert witnesses who offered the evidence; however, the court erroneously refused to allow her to do so. We further conclude that the District Court abused its discretion in instructing the jury on the meaning of "safe as used," in light of the absence of any authority to support the court's definition. Finally, in light of the court's correct pretrial ruling on summary judgment, we conclude that the court abused its discretion in refusing to instruct the jury that skin contact with the PNC product was common in the nail industry.

¶37 *CROSS-APPEAL: Did the District Court err in denying PNC's Motion for Directed Verdict as to punitive damage liability?*

¶38 In light of our decision on Kenser's direct appeal, a retrial will be necessary. It will be incumbent upon the District Court on retrial to determine whether a directed verdict as to punitive damage liability is appropriate, based upon the evidence introduced in the new trial. We therefore decline to reach PNC's cross-appeal issue.

## CONCLUSION

¶39 For the foregoing reasons, we reverse the District Court and remand for a new trial in a manner consistent with this Opinion.


/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT

14